UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and THE WURTTEMBERGISCHE VERSICHERUNGS AG: the subscribers to the contract of insurance numbered BB 040010/19 | : | |
| Plaintiffs | : | C.A. No. 06-33 T |
| vs. | : | |
| MORVILLO AND SONS, INC.; AND LEE'S MANUFACTURING CO. INC., | : | |
| Defendants | : | |

**DEFENDANT, MORVILLO AND SONS, INC. AND LEE'S MANUFACTURING CO. INC., AMENDED ANSWER TO PLAINTIFFS' COMPLAINT AND COUNTER-CLAIM**

The Defendants, Morvillo and Sons, Inc. ("Morvillo") and Lee's Manufacturing Co., Inc. ("Lee's"), collectively referred to as "Defendants" or "Morvillo", hereby respond to the Plaintiffs' ("Underwriters") Complaint, as follows:

1. As to paragraphs 5, 9, 11, 21, and 174, the Defendants respond that they are without sufficient information to provide a response at this time.

2. As to paragraphs 1, 2, 3, 6, 7, 8, 10, 12, 13, 14, 26, 27, 29, 30, 33, 35, 50, 51, 52, 53, 69, 70 and 71 the Defendants admit the allegations.

3. As to paragraphs 15, 16, 20, 31, 66, 67, 68, 181, 185, 186, 194, 197, 199, 200, 202, 203, 207 and 208 the Defendants deny the allegations.

4. As to paragraphs 178, 195, 198, 201 and 204 the Defendants repeat and restate their responses to the paragraphs preceding each.

5. As to paragraph 18, the term "paid" could be misleading. Morvillo admits that it has alleged that BAW failed to return gold pursuant to its consignment, also referred to as toll agreement, with BAW, or otherwise reimburse Morvillo. Morvillo denies the reminder of the allegation.

6. As to paragraph 19, the term "debt" could be misleading. Morvillo admits that it consigned gold to BAW on a toll basis, and that BAW had an outstanding toll account balance with Morvillo, when it went out of business.

7. As to paragraph 22, Morvillo admits that it is a fabricator of precious metal milled product, and produces product, milled from 24 k gold, into various grades and shapes for use by its customers. Morvillo denies the remaining allegations in this paragraph.

8. As to paragraph 28, Morvillo admits that allegation, but adds that it was an insured under an identical policy for the period of February 1, 2004 through February 1, 2005, and such policy may apply in this matter.

9. As to paragraph 31, Morvillo admits that the Policy provided coverage for precious metals provided on a toll basis to customers, and that the Policy provided for limits of $250,000.00 during certain peak periods, which increased limits Morvillo contends are applicable to this claim. Morvillo submits that the term "stock" could be misleading. Morvillo denies the remaining allegations in this paragraph.

10. As to paragraph 37, Morvillo admits that it provided a credit application to BAW to check references, not to extend a line of financial credit to BAW. Morvillo denies the remaining allegations in this paragraph.

11. As to paragraph 39, Morvillo admits that it agreed to provide BAW with precious metals on a toll basis, whereby metal was provided to BAW, and whereby BAW was required to

return the same or equivalent metal to Morvillo, and whereby BAW was to pay Morvillo a fee for labor. Said toll agreement is described in more detail in Morvillo's Counter-claim filed contemporaneous herewith.

12. As to paragraph 45, and throughout the Complaint, the term "sold" could be misleading, as it is used in a casual business context by people in the industry and is being applied in a strict sense for the purposes of a coverage dispute in the context of this claim and resulting litigation. Morvillo admits that it provided gold to BAW in strip for manufacturing. Morvillo denies that it "sold" gold to BAW.

13. As to paragraph 46, Ms. Norris admits that she gave a statement, but Morvillo contends that she did not receive the "copy of the transcript that is Exhibit C" to the Complaint, until about the same time that the Complaint was filed. The transcript was actually receive at Morvillo on December 15, 2005, not August 5, 2005, as alleged by the Underwriters. The company went through a plant shut down, and it was not until January 31, 2006, that Ms. Norris had an opportunity to respond. Said response was sent on January 31, 2006 to Richard Sherman, Eastland Claims Service, Inc., a representative for the Underwriters investigating the claim. Morvillo denies that remaining allegations in this paragraph.

14. As to paragraph 48, Morvillo admits that most orders for metal were received from BAW in the form of a "purchase order". However, one or more orders were verbally placed. Morvillo also submits that the term "purchase order" could be misleading as the consignments of gold reflected in the "purchase orders" were not purchased, but were provided on a toll basis.

15. As to paragraphs 55 - 62, that include allegations that Morvillo's customer's obligation to return precious metal provided to them on a toll basis, or otherwise reimburse

Morvillo, constituted "compensation", Morvillo denies the same. Morvillo denies that return of precious metal or reimbursement for the same was even an element of compensation. Morvillo neither admits nor denies the remainder of paragraphs 55 - 62, and leaves the Underwriters to their proof thereon.

16. As to paragraphs 63 - 65, Morvillo admits the allegations, except to the extent that the allegations are that the labor charge was a "second" means of compensation.

17. As to the remaining paragraphs of the Complaint, the Defendants neither admit nor deny the allegations contained therein, and leave Plaintiffs to their proof thereon.

**DEFENDANTS' COUNTERCLAIM FOLLOWS AND IS FILED CONTEMPORANEOUS HEREWITH.**

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and THE WURTTEMBERGISCHE VERSICHERUNGS AG: the subscribers to the contract of insurance numbered BB 040010/19 | : | |
| Plaintiffs | : | C.A. No. 06-33 T |
| vs. | : | |
| MORVILLO AND SONS, INC.; AND LEE'S MANUFACTURING CO. INC., | : | |
| Defendants | : | |

**DEFENDANT, MORVILLO AND SONS, INC. AND LEE'S MANUFACTURING CO. INC., AMENDED ANSWER TO PLAINTIFFS' COMPLAINT AND COUNTER-CLAIM**

The Defendants, Morvillo and Sons, Inc. ("Morvillo") and Lee's Manufacturing Co., Inc. ("Lee's"), collectively referred to as "Defendants" or "Morvillo", hereby respond to the Plaintiffs' ("Underwriters") Complaint, as follows:

1. As to paragraphs 5, 9, 11, 21, and 174, the Defendants respond that they are without sufficient information to provide a response at this time.

2. As to paragraphs 1, 2, 3, 6, 7, 8, 10, 12, 13, 14, 26, 27, 29, 30, 33, 35, 50, 51, 52, 53, 69, 70 and 71 the Defendants admit the allegations.

3. As to paragraphs 15, 16, 20, 31, 66, 67, 68, 181, 185, 186, 194, 197, 199, 200, 202, 203, 207 and 208 the Defendants deny the allegations.

4. As to paragraphs 178, 195, 198, 201 and 204 the Defendants repeat and restate their responses to the paragraphs preceding each.

5. As to paragraph 18, the term "paid" could be misleading. Morvillo admits that it has alleged that BAW failed to return gold pursuant to its consignment, also referred to as toll agreement, with BAW, or otherwise reimburse Morvillo. Morvillo denies the reminder of the allegation.

6. As to paragraph 19, the term "debt" could be misleading. Morvillo admits that it consigned gold to BAW on a toll basis, and that BAW had an outstanding toll account balance with Morvillo, when it went out of business.

7. As to paragraph 22, Morvillo admits that it is a fabricator of precious metal milled product, and produces product, milled from 24 k gold, into various grades and shapes for use by its customers. Morvillo denies the remaining allegations in this paragraph.

8. As to paragraph 28, Morvillo admits that allegation, but adds that it was an insured under an identical policy for the period of February 1, 2004 through February 1, 2005, and such policy may apply in this matter.

9. As to paragraph 31, Morvillo admits that the Policy provided coverage for precious metals provided on a toll basis to customers, and that the Policy provided for limits of $250,000.00 during certain peak periods, which increased limits Morvillo contends are applicable to this claim. Morvillo submits that the term "stock" could be misleading. Morvillo denies the remaining allegations in this paragraph.

10. As to paragraph 37, Morvillo admits that it provided a credit application to BAW to check references, not to extend a line of financial credit to BAW. Morvillo denies the remaining allegations in this paragraph.

11. As to paragraph 39, Morvillo admits that it agreed to provide BAW with precious metals on a toll basis, whereby metal was provided to BAW, and whereby BAW was required to

return the same or equivalent metal to Morvillo, and whereby BAW was to pay Morvillo a fee for labor. Said toll agreement is described in more detail in Morvillo's Counter-claim filed contemporaneous herewith.

12. As to paragraph 45, and throughout the Complaint, the term "sold" could be misleading, as it is used in a casual business context by people in the industry and is being applied in a strict sense for the purposes of a coverage dispute in the context of this claim and resulting litigation. Morvillo admits that it provided gold to BAW in strip for manufacturing. Morvillo denies that it "sold" gold to BAW.

13. As to paragraph 46, Ms. Norris admits that she gave a statement, but Morvillo contends that she did not receive the "copy of the transcript that is Exhibit C" to the Complaint, until about the same time that the Complaint was filed. The transcript was actually receive at Morvillo on December 15, 2005, not August 5, 2005, as alleged by the Underwriters. The company went through a plant shut down, and it was not until January 31, 2006, that Ms. Norris had an opportunity to respond. Said response was sent on January 31, 2006 to Richard Sherman, Eastland Claims Service, Inc., a representative for the Underwriters investigating the claim. Morvillo denies that remaining allegations in this paragraph.

14. As to paragraph 48, Morvillo admits that most orders for metal were received from BAW in the form of a "purchase order". However, one or more orders were verbally placed. Morvillo also submits that the term "purchase order" could be misleading as the consignments of gold reflected in the "purchase orders" were not purchased, but were provided on a toll basis.

15. As to paragraphs 55 - 62, that include allegations that Morvillo's customer's obligation to return precious metal provided to them on a toll basis, or otherwise reimburse

Morvillo, constituted “compensation”, Morvillo denies the same. Morvillo denies that return of precious metal or reimbursement for the same was even an element of compensation. Morvillo neither admits nor denies the remainder of paragraphs 55 - 62, and leaves the Underwriters to their proof thereon.

16. As to paragraphs 63 - 65, Morvillo admits the allegations, except to the extent that the allegations are that the labor charge was a “second” means of compensation.

17. As to the remaining paragraphs of the Complaint, the Defendants neither admit nor deny the allegations contained therein, and leave Plaintiffs to their proof thereon.

**DEFENDANTS’ COUNTERCLAIM FOLLOWS AND IS FILED CONTEMPORANEOUS HEREWITH.**

## COUNTERCLAIMS OF MORVILLO AND SONS, INC. AND LEE'S MANUFACTURING CO., INC.

### Background -- Morvillo's Business

1. Morvillo is in the business of fabricating precious metals, principally 24k gold, into various grades and shapes for use in manufacturing by its customers.

2. Morvillo maintains on its premises a substantial inventory of precious metals.

3. Morvillo provides such fabricated metals to manufacturers, principally jewelry manufacturers, on a toll basis.

4. The toll arrangement is such that Morvillo provides precious metal product for short term use and charges a labor charge as compensation for its services.

5. Under the toll agreement, metals provided to customers/manufacturers must be returned to Morvillo within ten (10) days.

6. As a matter of practice, after Morvillo delivered metal to a customer, it would carry a balance of ounces of 24k gold on that customer's toll account with Morvillo. When the next delivery was made, the customer would have an amount of metal equivalent to the previous delivery, ready to be picked up and returned to

Morvillo. In other words, after the first delivery, each subsequent delivery was to correspond with a pick up to balance out the toll account.

7. Customers are required to return the same metals or an equivalent quantity and quality of metal to Morvillo. Sometimes the metal returned includes the same molecules of metal provided, sometimes it does not.

8. In the event that metal is not available to a customer, or if a customer chooses, payment in dollars at the market price of the metal on the date of delivery may be returned to Morvillo.

9. Payment for labor charges -- which covers, *inter alia*, acquisition, fabrication, packing, shipping, overhead, risk management -- is due in thirty days from the date of delivery.

10. The labor charge is typically 27 cents per penny weight ("dtw") of metal provided.

11. Morvillo's delivery of metals to customers on the above-described basis (hereinafter referred to an "toll arrangement" or "toll basis") was documented using standard business forms, such as purchase orders, invoices and packing slips, on an improvised basis, by indicating the amount of metal being delivered, the amount of the labor charge due, and the amount of metal due on the toll account.

**Policy of Insurance**

12. Since February, 2001, Morvillo has had an "All Risks" policy of insurance with Underwriters at Lloyd's, London ("Underwriters") covering "All Risks of Physical Loss or Damage" (hereinafter referred to as the "Policy").

13. The Policy specifically provided coverage for losses to Morvillo's interests at third party locations (hereinafter referred to as "Part V").

14. The Part V coverage further specifically provided coverage for losses in the event of a third parties' failure to respond to the loss of, or damage to, Morvillo's insurable interest.

15. Policy limits for Part V coverage were $150,000.00, increasing to $250,000.00 during peak months.

16. Morvillo paid an additional premium for Part V coverage, distinct from the premium paid for coverage for stock on its premises.

17. Morvillo, at all times relevant hereto, understood that it had an insurable interest in its metals provided to customers on the above-described toll basis, under Policy with Defendants.

18. The Defendants, at all times relevant hereto, understood that Morvillo had an insurable interest in its metals provided to customers on the above-described toll basis, under its All Risk Policy with Defendants.

19. At all relevant times, the Underwriters were aware that a significant portion of Morvillo's business consisted of providing metals to third parties on a toll basis.

20. At all relevant times, the Underwriters understood that the Policy provided coverage to Morvillo for physical loss of, or damage to, metals it delivered to its customers on a toll basis.

21. At all relevant times, the Underwriters understood that the Policy provided coverage to Morvillo for any physical loss to goods that Morvillo entrusted to a customer where that loss resulted from the customer going out of business or filing for bankruptcy.

22. A portion of the premium charged by the Underwriters for the Policy specifically related to coverage for losses incurred by Morvillo at the premises of third-party customers of Morvillo.

23. Since first entering into the Policy in 2002, Morvillo has renewed the Policy annually and paid all annual premiums with respect thereto.

24. There have been no material changes made to the Policy since its inception.

25. The annual Policy together with the annual Application constituted representations by the Underwriters to Morvillo that the Policy provided

coverage to Morvillo for goods delivered on a toll basis to customers of Morvillo at the customers' locations.

26. Based on the Underwriters' representations that the Policy provided coverage to Morvillo for goods delivered on a toll basis to customers of Morvillo, Morvillo paid on an annual basis the portion of the premium which corresponded to coverage for goods at other locations.

**Morvillo's 2002 Claim under Third Party Premises Coverage**

27. In 2002, Morvillo had coverage substantially and materially the same as the Policy in this matter, referred to as Declaration No. BB010010/19, with certain Underwriters at Lloyds, most of whom were the same as the Underwriters providing coverage under the Policy in this matter.

28. In February, 2002, Morvillo incurred a loss of metals that it had provided to a customer, Alayna Gold Creation, Inc., ("Alayna") in the amount of approximately 158 ounces, corresponding to a value of approximately $47,000.00.

29. With regard to the 2002 loss, Morvillo had provided fabricated gold to Alayna on the same toll basis described above, and Alayna failed to return gold to Morvillo on the toll account, and failed to pay for the gold.

30. Morvillo submitted a claim under the 2002 Policy for the loss, (the "2002 Claim")

31. Upon information and belief, the Underwriters conducted an investigation into the circumstances giving rise to the 2002 Claim.

32. In response to the 2002 Claim, the Underwriters acknowledged that the Policy covered Morvillo for the loss it incurred for metal delivered on a toll basis, and made payment to Morvillo for the 2002 Claim.

**The BAW Loss**

33. For a number of years, Morvillo has done business with Bangles Around the World ("BAW"), providing fabricated metals for BAW's jewelry manufacturing operation.

34. Over a period of several years, Morvillo engaged in numerous transactions with BAW in which Morvillo delivered goods to BAW on the above-described toll basis.

35. Orders for metal would be placed by BAW with Morvillo via a "purchase order", utilized to indicate the type and amount of metal to be delivered, or sometimes a verbal order via telephone.

36. Morvillo would set about to fill the order, completing in the process a packing list, identifying the type and amount of metal delivered.

37. Contemporaneous with the packing slip, Morvillo would prepare and provided to BAW an invoice which would indicate: (a) the type and amount of

metal being provided being added to BAW's toll account; and (b) the amount of payment due for the labor charge. The only amount that the invoices reflected as being due was the labor charge, as the metal was being provided on a toll basis.

38. Until the metal was returned, or reimbursement for any metal retained was made, Morvillo retained an ownership/property interest in the metal provided.

39. Morvillo maintained detailed records of the metals provided to BAW on a toll basis, and kept strict account of any balance on BAW's toll account with Morvillo. Goods in the possession of BAW, converted to the equivalent amount of fine gold.

40. Generally, the balance on BAW's toll account was paid down to nearly zero on a shipment to shipment basis. So that with each new delivery to BAW, Morvillo would pick up an amount of metal equal to the amount of the last delivery.

41. Beginning in November, 2004, however, Morvillo sent two shipments close together, on November 15th and 16th, for 105.41 and 96.43, respectively. When Morvillo made a third November delivery, it delivered 217.80 and picked up 192.90, which mostly covered the first two shipments of November, but they also delivered another 217.80.

42. On December 13, 2004, Morvillo delivered an additional 231.03, and were supposed to pick up the 217.80 delivered on November 30, 2004. But, BAW

has nothing for Morvillo to pick up. This was essentially the first time that BAW's toll account was not effectively zeroed with a new delivery. Accordingly, the toll account had grown to 448.83 oz of 24k gold.

43. On January 12, 2005, Morvillo made a delivery of 267.15 oz. with the understanding that BAW have gold ready to pick up for November 30 shipment of 217.80 plus the December 13, 2004 shipment of 231.03. When the delivery was made, so, they only provided 225.05 oz. back to Morvillo, replacing the metal delivered November 30, 2004, leaving the December 13, 2004 and January 12, 2005 deliveries on toll with BAW.

44. This was a violation of Morvillo's agreement of the toll account with BAW, so Morvillo refused to delivery more metal. This left an outstanding balance of 501.075 oz. 24k gold on BAW's toll account

45. Morvillo diligently attempted to recover its metal or payment therefor, from BAW, but was unsuccessful.

46. In early May 2005, Morvillo discovered that BAW was going out of business.

47. Morvillo suffered a physical loss of goods it entrusted to BAW having a value equal to the BAW Toll Balance (the "BAW Loss").

48. In May 2005, Morvillo presented a claim for the BAW Loss to the Underwriters.

49. The Underwriters did not respond to Morvillo's claim for an extended period of time.

50. Accordingly, in December 2005, Morvillo submitted a Proof of Loss to the Underwriters for the BAW Loss.

51. The Underwriters declined to cover the BAW Loss.

52. The Underwriters' primary reason for declining coverage was the Underwriters' claim that when Morvillo delivered the metal on a toll basis to BAW, title to said metal transferred to BAW and, therefore, the goods were no longer Morvillo's metal and were not covered under the Policy.

53. The Underwriters took this position knowing full well that on numerous occasions they had previously acknowledged coverage for the identical type of loss under the identical type of coverage, and despite the fact that they had previously acknowledged that goods delivered on a toll basis remained the goods of the party that issued the goods, and despite the representations by the Underwriters and the Underwriters' prior practice that clearly indicated to Morvillo that such a Loss was covered under the Policy.

**COUNT I -- COUNTERCLAIM**

**Breach of Contract**

54. Morvillo repeats and realleges each of the allegations contained in the paragraphs above.

55. Based on the above facts and allegations, the Underwriters are liable to Morvillo for breach of Contract.

56. As a result of Underwriters' breaches, Morvillo and Lee's have been damaged and otherwise damnified, and are entitled to damages, including but not limited to damages on the contract, consequential damages, costs and attorneys fees.

**COUNT II -- COUNTERCLAIM**

**Fraud in the Inducement**

57. Morvillo repeats and realleges each of the allegations contained in the paragraphs above.

58. Morvillo relied on the representations of the Underwriters applying for and in renewing the Policy and paying the premiums therefor, including the premium for the Policy's provision for goods entrusted to third parties.

59. Morvillo was induced by the Underwriters to renew the Policy annually and pay an additional premium for the Policy's "third party" provision by the

representations of the Underwriters that the Policy provided coverage for a loss resulting from the failure of a Morvillo customer to return, or compensate Morvillo for, goods delivered on a toll basis, and by their conduct in paying the 2002 Claim as well as their payment of similar claims by other policy holders.

60. As a result of Underwriters' fraudulent inducements, Morvillo and Lee's have been damaged and otherwise damnified, and are entitled to damages, including but not limited to damages on the contract, consequential damages, costs and attorneys fees, and are entitled to punitive damages.

## COUNT III – COUNTERCLAIM

### Bad Faith

61. Morvillo repeats and realleges each of the allegations contained in the paragraphs above.

62. Contrary to their fiduciary obligation to their insured, in violation of the implied covenant of fair dealing, and in stark contrast to their prior custom and practice in claims such as this one, the Defendants set out to create a record with Ms. Norris in support of a predetermined denial.

63. The Defendants failed to fully and promptly respond to Plaintiff's claims for coverage and requests for substantive responses in connection with the underlying claim.

64. The Defendants failed to assemble all the facts necessary for a fair and comprehensive investigation, before response.

65. The Defendants failed to subject the results of whatever investigation that it conducted, to reasonable cognitive evaluation and review.

66. The Defendants breached their obligation to deal with the Plaintiff consistent with its implied-in-law obligations of good faith and fair dealing.

67. The Defendants failed to respond in a meaningful manner or offer a reasonable compromise in an effort to relieve its insured, the Plaintiff, from the burden and expense of litigation.

68. The Defendants failed to engage in settlement discussions in an effort to relieve its insured from the burden and expense of litigation.

69. The Defendants acted unreasonably and knew or was conscious of the fact that it was unreasonable.

70. The Defendants did not have a reasonable basis in law or fact to deny the clam.

71. Morvillo and Lee's have been damaged as a result of the Underwriters' conduct in violation of Rhode Island bad faith law.

72. Based on the above facts and circumstances, Defendants are liable to the Plaintiff for Bad Faith. R.I.G.L. section 9-1-33; *Skaling v. Aetna Insurance Company*, 799 A.2d 997 (R.I. 2002).

**COUNT IV – COUNTERCLAIM**

**Reliance and Estoppel**

73. Morvillo repeats and realleges each of the allegations contained in the paragraphs above.

74. Based on the above facts and allegations, Underwriters are liable to Morvillo and Lee's on theories of Reliance and Estoppel.

75. Morvillo and Lee's have been damaged as a result of the Underwriters' violations.

WHEREFORE, the Plaintiffs, Morvillo and Sons, Inc. and Lee's Manufacturing Co., Inc. demand judgment against the Defendants, compensatory damages including past and future damages that will accrue, consequential damages including but not limited to adjustments to the value of gold since the date that the initial notice claim was provided, punitive damages, and attorneys fees pursuant to R.I.G.L. section 9-1-45, in an amount exclusive of interest and costs sufficient to confer jurisdiction upon this Honorable

Court, and the Plaintiff also demands judgment for interest and costs, including but not limited to attorneys fees, and such other relief as the Court shall deem fit to grant.

J. SCOTT KILPATRICK, ESQ. is hereby designated trial counsel.

The Plaintiff hereby demands a TRIAL BY JURY and RESERVES the right to propound further and additional Counts.

Defendants and Counterclaim Plaintiffs,
MORVILLO AND SONS, INC and
LEE'S MANUFACTURING CO., INC.
By their Attorneys,
CHISHOLM CHISHOLM & KILPATRICK, LLP

By ______________________
J. SCOTT KILPATRICK #4036
One Turks Head Place
Suite 1313
Providence, Rhode Island 02903
(401) 331-6300 Telephone
(401) 421-3185 Facsimile

Dated: April 3, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the within Answer was mailed by regular mail, postage prepaid, to C. RUSSELL BENGTSON, ESQUIRE at One Turks Head Place, Suite 400, Providence, RI 02903 on this 3rd day of April, 2006.

______________________