UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and THE WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19 | : | |
| Plaintiffs | : | C.A. No. 06-33T |
| vs. | : | |
| MORVILLO AND SONS, INC.; and LEE'S MANUFACTURING CO. INC., | : | |
| Defendants | : | |

**DEFENDANTS', MORVILLO AND SONS, INC. AND LEE'S MANUFACTURING CO. INC., OBJECTION TO PLAINTIFFS' MOTION TO DISMISS COUNTS II AND IV OF DEFENDANTS' COUNTERCLAIM**

Now come the Defendants, Morvillo and Sons, Inc. and Lee's Manufacturing Co., Inc. and object to Plaintiffs' Motion to Dismiss with Prejudice the Second and Fourth Counterclaims. As grounds thereof, Defendants submit their Memorandum of Law in Support of their Objection to Plaintiffs' Motion to Dismiss the Second and Fourth Counterclaims.

J. Scott Kilpatrick, Esquire (#4036)
Chisholm Chisholm & Kilpatrick LLP
One Turks Head Place, Suite 1313
Providence, RI 02903
(401) 331-6300
(401) 421-3185 FACSIMILE

**Certification of Service**

I hereby certify that I mailed a copy of the within on the 22nd day of May, 2006 to C. Russell Bengtson, Esq., Carroll, Kelly & Murphy, One Turks Head Place, Suite 400, Providence, RI 02903.

__________________________

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and THE WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19 | : | |
| Plaintiffs | : | C.A. No. 06-33T |
| vs. | : | |
| MORVILLO AND SONS, INC.; and LEE'S MANUFACTURING CO. INC., | : | |
| Defendants | : | |

**DEFENDANTS', MORVILLO AND SONS, INC. AND LEE'S MANUFACTURING CO. INC., MEMORANDUM IN SUPPORT OF OBJECTION TO PLAINTIFFS' MOTION TO DISMISS COUNTS II AND IV OF DEFENDANTS' COUNTERCLAIM**

## I. INTRODUCTION

The Plaintiffs', THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and THE WURTTEMBERGISCHE VERSICHERUNGS AG (hereinafter referred to collectively, as "Underwriters"), filed a Complaint seeking a declaration that they do not owe insurance coverage for a substantial loss incurred by the Defendants, MORVILLO AND SONS, INC.; and LEE'S MANUFACTURING CO. INC. (hereinafter referred to collectively, as "Morvillo"). Morvillo has responded with an Answer, which was timely amended to include four (4) counterclaims, because it is Morvillo's position that Underwriter's denial of coverage and its action in this Court are an attempt to avoid responsibility for its end of a longstanding and

fully understood agreement that precious metals provided by Morvillo to manufacturers on a toll basis (where customer is charged for labor, but is expected to return gold to Morvillo) is an insured interest under the agreement. Underwriters seek to capitalize on inarticulate uses of the word "sold" and the fact the packing list used the term "sold" as semantical justification for denying coverage of a risk that they had knowingly and willingly undertaken, and for which Morvillo paid premiums.

By doing so, Underwriters have: (1) Breached their Contract with Morvillo; (2) potentially committed Fraud in the Inducement; (3) committed Insurance Bad Faith; and (4) their claims should be denied under theories of Estoppel and Reliance.

Underwriters have moved to dismiss Counts II and IV of Morvillo's Counterclaims (Fraud and Estoppel/Reliance) under FRCP 9(b) and 12(b)(6). As to Count II (Fraud in the Inducement), as explained below, Morvillo will agree for the limited purposes of this Motion that it has not plead facts sufficient to sustain such a claim at this time, but requests that the Count be dismissed without prejudice, so that if such facts are established through discovery, a Motion may be brought to add a claim for Fraud. As to Count II (Estoppel/Reliance), the Underwriters' Motion must fail because: (a) sufficient facts have been plead for a claim of Estoppel, and (b) there has been no determination of the scope of coverage in the contract at issue.

## II. BACKGROUND AND FACTS

As set forth in the Counterclaims, Morvillo is in the business of fabricating precious metals, principally 24k gold, into various grades and shapes for use in manufacturing by its

customers, and providing such metals to its customers on a toll basis.[1] The toll arrangement is such that Morvillo provides precious metal product for short term use and charges a labor charge as compensation for its fabrication services.[2] Under the toll agreement, metals provided to customers/manufacturers must be returned to Morvillo within ten (10) days.[3] Notwithstanding, the inarticulate use of the term "sold" by a Morvillo's employee during a recorded claim interview, and notwithstanding the use of the term "sold" on standard forms used to document transactions between Morvillo and its customers, the metal was provided to its customers on a toll basis, akin, as Underwriters point out in their Memorandum, to a bailment.[4] As the Counterclaims allege, the Underwriters were well aware of this arrangement and understood the metals in the possession of third parties to be covered by its All Risk insurance policy.[5]

Morvillo's delivery of metals to customers on the above-described basis was documented using standard business forms, such as purchase orders, invoices and packing slips, by indicating the amount of metal being delivered, the amount of the labor charge due, and the amount of *metal* due on the toll account.[6]

---

[1]Morvillo Counterclaims ¶¶ 1 - 6.

[2]Morvillo Counterclaims ¶¶ 6 - 11.

[3]Underwriter's Complaint ¶ 57; see also Statement attached to Underwriters' Complaint as Exhibit C, pp. 2-3.

[4]Morvillo Counterclaims ¶¶ 6 - 11; see also Underwriters' Complaint ¶ 45, and Statement attached to Underwriters' Complaint as Exhibit C, p. 2 - 3 and Underwriters' Memorandum at p. 2.

[5]Morvillo's Counerclaims ¶¶ 18 - 21.

[6]Movillo's Counterclaims ¶¶ 35 - 39.

Since February, 2001, Morvillo has had an "All Risks" policy of insurance with Underwriters covering "All Risks of Physical Loss or Damage" (hereinafter referred to as the "Policy"). The Policy specifically provided coverage for losses to Morvillo's "interests" at third party locations (hereinafter referred to as "Part V"). The Policy further specifically provided coverage for losses in the event of third parties' failure to respond to the loss of, or damage to, Morvillo's "insured interest". Morvillo paid an additional premium for Part V coverage, distinct from the premium paid for coverage for "stock" on its premises.[7] The Counterclaims allege that the annual Policy together with the annual Application constituted representations by the Underwriters to Morvillo that the Policy provided coverage to Morvillo for goods delivered on a toll basis to customers of Morvillo at the customers' locations. The Counterclaims further allege that based on the Underwriters' representations that the Policy provided coverage to Morvillo for goods delivered on a toll basis to customers of Morvillo, Morvillo paid on an annual basis the portion of the premium which corresponded to coverage for goods at other locations.[8]

Furthermore, the Counterclaims allege that Morvillo had in the past made a substantially identical claim for loss, under identical Policy language, which Underwriters acknowledged was covered under the Policy.[9]

With respect to the loss at issue in this case, the Counterclaims allege that for a number of years, Morvillo has done business with Bangles Around the World ("BAW"), providing

---

[7]Morvillo's Counterclaims ¶¶ 12 - 16.

[8]Morvillo's Counterclaims ¶¶ 25, 26.

[9]Morvillo's Counterclaims ¶¶ 27 - 32.

fabricated metals for BAW's jewelry manufacturing operation. Over a period of several years, Morvillo engaged in numerous transactions with BAW in which Morvillo delivered goods to BAW on the above-described toll basis. BAW's refusal or inability to return gold to Morvillo, left an outstanding balance of 501.075 oz. of 24k gold on BAW's toll account with Morvillo. Under the language of the Policy, Morvillo suffered a physical loss of goods it entrusted to BAW having a value equal to the BAW Toll Balance (the "BAW Loss").[10] In May 2005, Morvillo presented a claim for the BAW Loss to the Underwriters.[11] Rather than conduct the investigation of the claim as it had with respect to the previous 2002 claim that it had paid, the Underwriters apparently set out to create a record of catch words such as "sold" and "purchase order". [12] Indeed, Underwriters acknowledge that "Morvillo's own documents provided the primary basis for Underwriters conclusion that the transactions were sales...".[13]

The Counterclaims allege that the Underwriters' primary reason for declining coverage was the Underwriters' claim that when Morvillo delivered the metal on a toll basis to BAW, title to said metal transferred to BAW and, therefore, the goods were no longer Morvillo's metal and were not covered under the Policy. The Underwriters took this position knowing full well that on numerous occasions they had previously acknowledged coverage for the identical type of loss under the identical type of coverage, and despite the fact that they had previously acknowledged

---

[10]Morvillo's Counterclaims ¶¶ 33 - 47.

[11]Morvillo's Counterclaims ¶ 48.

[12]Morvillo's Counterclaims ¶¶ 49 - 53; see also Statement attached to Underwriters' Complaint as Exhibit C.

[13]Underwriters' Memorandum p. 6.

that goods delivered on a toll basis remained the goods of the party that issued the goods, and despite the representations by the Underwriters and the Underwriters' prior practice that clearly indicated to Morvillo that such a Loss was covered under the Policy.[14]

## III. ARGUMENT

### A. Fraud in the Inducement

As noted above in the Introduction, Morvillo will agree that this Count may be dismissed, but asks that the Court dismiss the Count *without prejudice*. Morvillo acknowledges that it has alleged that at the time that the Policy was entered into and renewed each year, both Morvillo and Underwriters understood losses such as the one at issue here to be covered losses to physical property under the Policy. It is the improper and disingenuous change in Underwriters' stated view of coverage that Morvillo alleges has motivated Underwriters' denial of this claim. If true, then it would appear that Underwriters could not have committed fraud in the inducement, because in order to be held liable under such a theory, Underwriters must have intended there to be no coverage for this loss at the inception of the Policy in 1999 and each year thereafter. At this point, the evidence seems compelling that such is not the case, and Underwriters knew full well that losses such as the one at issue in this case, were indeed covered under the Policy.

However, if discovery reveals that Underwriters intended at the inception of the Policy, or at the annual renewal periods, that there would be no coverage for a loss such as this, then Morvillo would and should seek to add a Count for Fraud in the Inducement. Such a measure would be subject to Court approval and permitting the dismissal of the Fraud Count at this time, without

[14]Morvillo's Counterclaims ¶ 52 - 53.

prejudice, would be in the interests of justice. On the other hand, to preclude Morvillo from making a future Motion to tailor its pleading to comport with developed evidence would he highly prejudicial to Morvillo and not in the interests of justice.

**B. <u>The Counterclaim makes out a Claim for Reliance and Estoppel</u>**

The Underwriters submit three (3) arguments as to why the Reliance and Estoppel claim must be dismissed. The first two arguments, set forth in their Memorandum under its "Point II" at subsections A and B, are essentially the same argument. Relying on *Zarella v. Minnesota Mutual Life Ins. Co.*, 824 A.2d 1249 (R.I. 2003), the Underwriters submit that: (a) where the insurance policy is express and unambiguous, the doctrine of equitable estoppel cannot apply, and (b) they contend that Morvillo is using the doctrine of equitable estoppel to enlarge the established scope of insurance coverage.

Morvillo agrees that *Zarella* sets forth this proposition of law. The Underwriters' contention, however, overlooks the allegations and facts which go to the core of the parties' dispute – What is the scope of coverage in this All Risks Policy ?

In *Zarella*, the Court had previously concluded that the insurance policy was *unambiguous*. *Id.* at 1260 (emphasis added). Accordingly, the Court held that the doctrine of equitable estoppel was inapplicable as it could not be used to expand the scope of ***clearly defined*** insurance benefits. *Id.* Because the scope of insurance coverage was clearly expressed and without any ambiguity, the Court dismissed the estoppel claim holding that there were no set of facts under which plaintiff could prevail on that theory. *Id.*

In this case, and certainly at this stage, there has been no determination that the scope of coverage afforded in the All Risks policy is unambiguous or clearly defined. On the contrary, the Policy is not specific in its language. The Policy at issue here is, by its nature and by definition, an extremely broad instrument, intended to provide precious metals businesses with comprehensive risk management.[15]

As one can see from the Policy language, this "All Risks" insurance policy is not written as other policies are written. It's drafters used broad terms with little explanation of coverage. The coverage in dispute arises from Policy language as follows:

> V USD 150,000 any one occurrence any one location in respect of interest at third Parties increasing to USD 250,000 any one occurrence, any one loss for a period not exceeding three months during the Policy period.
>
> * * *
>
> Sum Insured V of this insurance affords coverage in the event of the failure on an (sic) third party in responding to the loss of, or damage to, the insured interest.

Defendants submit that this language is certainly amenable to the interpretation presently attributed by Morvillo and, indeed, previously attributed by Underwriters. In fact, the language of such policies is intentionally vague and broad as it is the very nature of All Risk policies to insure against the unexpected and fortuitous. All Risks policies have been described as follows:

---

[15]See Policy attached Underwriters' Complaint, as Exhibits A and B.

> [A] policy of insurance insuring against 'all risks' is to be considered as creating a special type of insurance extending to risks not usually contemplated, and recovery will usually be allowed, at least for all losses of a fortuitous nature, in the absence of fraud or other intentional misconduct of the insured, unless the policy contains a specific provision excluding the loss from coverage.

*Standard Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F. Supp. 164, 191 (D. Conn. 1984)(quoting C. C. Marvel, Annotation, *Coverage Under "All Risks" Insurance*, 88 A.L.R.2d 1122, 1125 (1963)). Such policy language as it exists in this case is not express and unambiguous, or certainly Underwriters would have moved to dismiss the Breach of Contract claim and, in turn, the Bad Faith claim. Once discovery has been conducted the scope of coverage provided in the All Risks policy may well be determinable at that time.

Morvillos's allegation is that the All Risk policy is broad and extends to its claimed loss. Underwriters argue that there is no coverage for the loss. However, at this stage the Court is not in a position to make a determination that the policy is clearly expressed and unambiguous. Accordingly, Plaintiffs' first two arguments for dismissal of this Count are premature and should be denied.

The Plaintiffs' fallback argument is simply that Morvillo has failed to allege the elements of an estoppel claim. With respect to a Reliance and Estoppel claim in an insurance coverage dispute, the Rhode Island Supreme Court articulated that "the insured must show (1) that he was misled by the acts or statements of the insurer or its agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable; and (4) detriment or prejudice suffered by the insured based on the reliance." *Zarella*, 824 A.2d at 1260.

The Counterclaim clearly states a claim for Reliance and Estoppel upon which relief can be granted. Read as a whole the Counterclaim establishes that Underwriters understood the nature of Morvillo's business; that they understood Morvillo's course of conduct with its customers, including its use of toll based transactions; and that Underwiters understood that Morvillo had an insured interest in metals provided to customers on a toll basis. Underwriters charged Morvillo and Morvillo paid an additional premium for the off-premises/third parties coverage. Plaintiffs offered the same All Risk policy over the course of several years. In fact, as set forth in the Counterclaims, it is alleged that Plaintiffs' acknowledged that its All Risk policy specifically covered the very loss Defendants now seek to recover.[16] The Defendants have alleged sufficient conduct by Plaintiffs upon which Defendants could reasonably rely, and did rely, to their detriment.

Under Rule 8(a), the rules of notice pleading apply to determinations under Rule 12(b)(6), and the Defendants have plead substantial facts and have alleged that they relied to their detriment. See *Educadores v. Hernandez*, 367 F.3d 61, 66 (1st Cir. 2004). Making all reasonable inferences on behalf of the non-moving party, the Defendants' allegations sustain Plaintiffs' motion to dismiss.

## IV. CONCLUSION

Morvillo respectfully requests that Underwriters Motion to Dismiss be granted as to Count II, without prejudice to the claim being reasserted if factual discovery merits, and denied as to Underwriters' Motion to Dismiss Count IV.

---

[16]Morvillo's Counterclaims ¶¶ 27 - 32.

Respectfully submitted,

J. Scott Kilpatrick, Esquire (#4036)
Chisholm Chisholm & Kilpatrick LLP
One Turks Head Place, Suite 1313
Providence, RI 02903
(401) 331-6300
(401) 421-3185 FACSIMILE

**Certificate of Service**

I hereby certify that I mailed a copy of the within on the 22nd day of May, 2006, to C. Russell Bengtson, Esq., Carroll, Kelly & Murphy, One Turks Head Place, Suite 400, Providence, Rhode Island 02903.