UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and THE WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19<br>Plaintiffs, | : | |
| -vs.- | : | CA No: 06-33T |
| MORVILLO AND SONS, INC.; and LEE'S MANUFACTURING CO. INC.,<br>Defendant | : | |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW**

Plaintiffs, THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19 (collectively referred to herein as "Underwriters"), by their attorneys Lankler & Carragher, LLP and Carol, Kelly & Murphy, respectfully submit this Reply Memorandum of Law in response to Defendants' opposition and in further support of Underwriters' motion, pursuant to FRCP 9(b) and 12(b)(6), to dismiss with prejudice the Second and Fourth Counterclaims of Defendants, MORVILLO AND SONS, INC.; and LEE'S MANUFACTURING CO. INC. (henceforth, "Morvillo").

**PRELIMINARY STATEMENT**

Morvillo is engaged in an elaborate shell game that might appropriately be dubbed "hide the sale." In an effort to distract from the primary issues relevant in this case, Morvillo attempts to walk away from its own documents, claiming that its use of the words "sold" and "invoice" and "purchase order" in those documents were not meant to suggest that a sales transaction was taking place. In addition, Morvillo attempts to

walk away from the statements of its own Comptroller, who actually said that the property in question was "sold." To replace all of the unwanted references to the property being sold and purchased, Morvillo offers a different terminology. Morvillo claims that the goods were not sold, but were provided on a "toll basis." According to its pleadings, goods that are delivered on a "toll basis" are recorded in a "toll account." In the "toll account" Morvillo records the amount of pure gold that was contained in any shipment of manufactured gold jewelry components to its customer as a debit and records the amount of pure gold delivered by a customer to Morvillo as a credit. The difference between the entries is referred to by Morvillo as the "toll balance."

In a strained effort to make the "toll balance" appear to be something other than a book keeping device recording a debt in pure gold ounces rather than in dollars, Morvillo makes the incredible statement that it supplied gold to its customers on a short term basis. Yet, Morvillo admits in its Amended Answer that it supplied manufactured gold jewelry components for use by its customers in the production of finished jewelry. Those jewelry manufacturers are in the business of selling the finished jewelry to their own customers. Therefore, the manufactured gold jewelry components supplied by Morvillo to its customers were expected to end up in the stream of commerce. Notwithstanding that fact, Morvillo incoherently maintains that it provided its manufactured gold jewelry components for "short term use" and that the gold provided to its customers had to be returned within ten days. One can easily understand that a New York jewelry manufacturer would have a difficult time telling a customer that the gold contained in the bracelets it was buying had to be returned to Rhode Island in a few days. In actuality,

what Morvillo provided to its customers on a short term basis was not gold, but a credit which was recorded in a pure gold denomination.

Finally, Morvillo suggests that Underwriters are to blame for the fact that the information provided by Morvillo during Underwriters investigation, lead to the conclusion that the transactions in question were sales. Morvillo accuses Underwriters of relying on the documents provided by Morvillo as the primary basis for its findings. It is submitted that most insureds would prefer that the decisions about their claims be made based upon the information they provide their insurers. Morvillo apparently wishes that Underwriters and the Court would look elsewhere, and they implicitly suggest that their ability to "hide the sale" depends on it.

## STATEMENT OF FACTS

For a full recitation of the relevant facts the Court is respectfully referred to the Complaint with accompanying exhibits and Underwriters' Memorandum of Law, dated April 24, 2006, filed in support of this motion ("Underwriters' Memo").

## ARGUMENT

### I. MORVILLO'S CLAIM FOR FRAUD IN THE INDUCEMENT SHOULD BE DISMISSED WITHOUT PREJUDICE

Morvillo does not contest Underwriters' motion to dismiss the Second Counterclaim for fraud in the inducement. Morvillo's Opposition at 6. Morvillo admits that they improperly raised a counterclaim that they knew the evidence did not support. In fact, Morvillo states that the evidence is compelling that there was no fraud in the inducement. *See Id.* It is submitted that bringing such a motion likely violates the requirements of FRCP Rule 11, and has compelled Underwriters to waste their resources.

Yet, Morvillo suggests that justice demands that they be afforded another opportunity to raise the same claim in the future. Morvillo makes the following point:

> [I]f discovery reveals that Underwriters intended at the inception of the Policy, or at the annual renewal periods, that there would be no coverage for a loss such as this, then Morvillo would and should seek to add a Count for Fraud in the Inducement.

Underwriters can end the suspense. Underwriters do not believe that the Policy provides coverage in a situation such as this, in which Morvillo sold manufactured gold jewelry components to a customer and was not paid for them. Underwriters have clearly set forth their position that they believe Morvillo sold the manufactured gold jewelry components to B.A.W. Indeed, the purpose of commencing this action was to seek a ruling from the court regarding the merits of Underwriters' position.

Morvillo has not demonstrated that there is any risk of injustice if its fraud claim is dismissed with prejudice. In fact, the suggestion by Morvillo that it intends to pursue discovery on a claim that it readily admits cannot be adequately plead should inform the Court as to the true motive behind Morvillo's desire to preserve its improper and completely unsubstantiated fraud claim. Morvillo should not be given a free pass to conduct such a fishing expedition. Therefore, the Court should dismiss the Second Counterclaim with prejudice.

## II. MORVILLO'S ESTOPPEL CLAIM SHOULD BE DISMISSED

The doctrine of Estoppel cannot be the basis for expanding the scope of the Policy to cover a situation in which Morvillo sold goods to a customer and was not paid for the same. See *Zarella v. Minnesota Mutual Life Ins. Co.*, 824 A.2d 1249 (R.I. 2003). Morvillo concedes that under Rhode Island law estoppel cannot be used to expand the scope of coverage of an insurance contract, but Morvillo argues that *Zarella* is not

applicable because the parties are in dispute as to the scope of coverage. Since, Morvillo does not contest the proposition that the Policy does not cover a situation in which Morvillo sold goods to a customer and was not paid for the same, *Zarella* is applicable. There is no dispute between the parties that it would be an expansion of the existing coverage if Underwriters are compelled to pay a claim based upon the failure of one of Morvillo's customers to make full payment on its account for goods purchased. Therefore, Morvillo's Estoppel claim should be dismissed.

The remainder of Underwriters' Estoppel arguments fail to address in any meaningful way the arguments set forth in Point II(C) of Underwriters' Memo. The Court is respectfully referred to those arguments, which will not be repeated herein.

**WHEREFORE,** Plaintiffs move this Court to enter an order dismissing the Second and Fourth Counterclaims contained in the Amended Answer and Counterclaims; and for whatever other relief the Court deems just and proper.

Dated: Providence, Rhode Island
June 9, 2006

C. Russell Bengtson #1233
Carroll, Kelly & Murphy
One Turks Head Place, Suite 400
Providence, Rhode Island 02903
Tele. No.: (401) 331-7272
Fax No.: (401) 331-4404

Owen B. Carragher, Jr.
Peter J. Rossi
Admitted *pro hac vice*
Lankler & Carragher, LLP
845 Third Avenue, 17th Floor
New York, NY 10022
Tel. No.: (212) 812-8910
Fax No.: (212) 812-8920

Counsel for Plaintiffs

**Certificate of Service**

I hereby certify that a true copy of the within was hand-delivered on the 9th day of June, 2006, to J.Scott Kilpatrick, Esq., Chisholm Chisholm & Kilpatrick LLP, One Turks Head Place, Suite 1313, Providence, Rhode Island 02903.

