UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THOSE INTERESTED UNDERWRITERS :
AT LLOYD'S, LONDON, and THE :
WURTTEMBERGISCHE VERSICHERUNGS AG :
the subscribers to the contract :
of insurance numbered :
BB 040010/19, :
Plaintiffs, :
:
v. : CA 06-33 T
:
MORVILLO AND SONS, INC., and :
LEE'S MANUFACTURING CO., INC., :
Defendants. :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is Plaintiffs' Motion to Dismiss (Document ("Doc.") #9) ("Motion to Dismiss" or "Motion") Defendants' second and fourth counterclaims. See Motion at 1. The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). A hearing was held on June 23, 2006. For the reasons stated herein, I recommend that the Motion be granted.

**Facts**[1]

Defendants Morvillo and Sons, Inc., and Lee's Manufacturing

---

[1] For purposes of deciding the instant Motion, the facts are taken from Defendants' amended answer and counterclaim and those portions of the Complaint which Defendants admit. See Defendant, Morvillo and Sons, Inc. and Lee's Manufacturing Co. Inc., Amended Answer to Plaintiffs' Complaint and Counter-claim (Document ("Doc.") #6) ("Amended Answer and Counterclaim"); Complaint (Doc. #1). The Court cites to the Amended Answer and Counterclaim either as: "Amended Answer and Counterclaim" (referring to the entire document), "Amended Answer" (referring only to the Amended Answer), or "Counterclaim" (referring only to the Counterclaim).

Co., Inc. (collectively "Defendants" or "Morvillo"),[2] are Rhode Island corporations with principal places of business in Rhode Island. <u>See</u> Complaint ¶¶ 2-3, 12. Morvillo is in the business of fabricating precious metals, primarily 24 karat ("k") gold, into various grades and shapes for use in manufacturing by its customers. Counterclaim ¶ 1. Morvillo maintains on its premises a substantial inventory of precious metals. <u>Id.</u> ¶ 2. Morvillo also provides fabricated precious metals to customers, principally jewelry manufacturers, on a "toll" basis. <u>Id.</u> ¶ 3. The toll arrangement is such that Morvillo provides precious metal product for short term use and charges a labor charge as compensation for its services. <u>Id.</u> ¶ 4. Under the toll agreement, the metal provided to a customer (or an equivalent quantity and quality of metal) must be returned to Morvillo within ten days, <u>see</u> <u>id.</u> ¶¶ 5, 7. Sometimes the metal returned includes the same molecules of metal provided, and sometimes it does not. <u>Id.</u> ¶ 7. In the event that the metal is not available to the customer, or if the customer chooses, the customer may pay Morvillo for the metal "in dollars at the market price of the metal on the date of delivery ...." <u>Id.</u> ¶ 8.

As a matter of practice, after Morvillo delivers metal to a customer it carries a balance of 24k gold on that customer's toll account with Morvillo. <u>Id.</u> ¶ 6. When the next delivery is made, the customer has an amount of metal equivalent to the previous delivery, ready to be picked up and returned to Morvillo. <u>Id.</u> In other words, after the first delivery, each subsequent delivery corresponds with a pick-up to balance out the toll account. <u>See</u> <u>id.</u>

Payment for labor charges—which cover, inter alia,

---

[2] Morvillo and Sons, Inc., and Lee's Manufacturing Co., Inc., share common ownership and operate out of the same location. <u>See</u> Complaint (Doc. #1) ¶ 4.

acquisition, fabrication, packing, shipping, overhead, and risk management—is due in thirty days from the date of delivery. Counterclaim ¶ 9. The labor charge is typically 27 cents per penny weight of metal provided. Id. ¶ 10.

For several years, Morvillo engaged in numerous business transactions with Bangles Around the World ("BAW") on the aforementioned toll basis. See id. ¶ 34. Generally, the balance on BAW's toll account was paid down to nearly zero on a shipment to shipment basis, meaning that with each new delivery to BAW, Morvillo would pick up an amount of metal equal to the amount of the last delivery. Id. ¶ 40. However, when Morvillo made a delivery of gold to BAW on December 13, 2004, BAW had nothing for Morvillo to pick up. See id. ¶ 42. This was essentially the first time that BAW's toll account was not effectively zeroed with a new delivery. Id. As a result, BAW's toll account increased to 448.83 oz. of 24k gold. Id.

On January 12, 2005, Morvillo made a delivery of 267.15 oz. of gold to BAW with the understanding that BAW would have available for pick up 448.83 oz. See id. ¶ 43. However, BAW only provided Morvillo with 225.05 oz., leaving an outstanding balance of 501.075 oz. See id. ¶¶ 43-44. This was a violation of Morvillo's agreement with BAW, and Morvillo refused to deliver any more metal to BAW. Id. 44. Morvillo attempted to recover its metal or payment therefor from BAW, but was unsuccessful. Id. ¶ 45. In early May 2005, Morvillo discovered that BAW was going out of business. Id. ¶ 46. Morvillo presented a claim to its insurer, Those Interested Underwriters at Lloyd's London and the Wurttembergishche Versicherungs AG the subscribers to the contract of insurance numbered BB 040010/19 ("Plaintiffs" or "Underwriters"), for the loss of gold that it had entrusted to BAW. See id. ¶¶ 47-48. Underwriters declined to cover the BAW loss. Id. ¶ 51.

Under the contract of insurance (the "Policy"), Underwriters agreed to provide insurance for the "Assured's Stock" against "All Risks of Physical Loss or Damage." Complaint ¶ 28. The Policy covered the period beginning on February 1, 2005, and ending on February 1, 2006.[3] Id. ¶ 29. Under its terms, the Policy provided Morvillo with $15 million of coverage for its stock at the Morvillo premises located at 160 Niantic Avenue in Providence. Id. ¶ 30. The Policy also provided $150,000 of coverage for Morvillo's stock when it was located at the premises of a third party, id., Exhibit A (Excerpts from Policy) at 1, and, according to Morvillo, "provided coverage for precious metals provided on a toll basis to customers, and ... provided for limits of $250,000.00 during certain peak periods, which increased limits ... are applicable to this claim," Amended Answer ¶ 9.

Underwriters' primary reason for declining coverage is Underwriters' contention that when Morvillo delivered the metal on a toll basis to BAW, title to the metal transferred to BAW, and, therefore, the goods were no longer Morvillo's metal and were not covered under the policy. Morvillo asserts that:

> Underwriters took this position knowing full well that on numerous occasions they had previously acknowledged coverage for the identical type of loss under the identical type of coverage, and despite the fact that they had previously acknowledged that goods delivered on a toll basis remained the goods of the party that issued the goods, and despite the representations by the Underwriters and the Underwriters' prior practice that clearly indicated to Morvillo that such a Loss was covered under the Policy.

Counterclaim ¶ 53.

---

[3] Morvillo was also insured under an identical policy of insurance for the period from February 1, 2004, through February 1, 2005. Answer ¶ 8.

**Travel**

Underwriters filed the instant declaratory judgment action on January 25, 2006. See Docket. They seek a declaration that there is no coverage for the claim under the Policy because: 1) BAW used all of the gold to manufacture and complete jewelry which was sold by BAW to its customers before May 10, 2005, see Complaint ¶¶ 193-194; 2) there was no physical loss or damage to insured property, see id. ¶¶ 196-197; 3) Morvillo had no insurable interest in the gold after it was delivered to BAW, see id. ¶¶ 199-200; 4) there was no fortuitous loss of insured property, see id. ¶¶ 202-203; and 5) upon completion of the claimed deliveries to BAW, Morvillo owned only a contractual obligation from BAW to pay a debt with payment to be made in the form of gold and/or money at BAW's option and this contractual obligation did not constitute insured property or "Stock" within the scope and terms of the Policy, see id. ¶¶ 207-208.

Morvillo filed an Answer (Doc. #5) on March 14, 2006, and an Amended Answer and Counterclaim (Doc. #6) on April 3, 2006. See Docket. In Count I of the Counterclaim, Morvillo alleges that Underwriters are liable for breach of contract because of their failure to pay the claim. See Counterclaim ¶¶ 54-56. In Count II, Morvillo claims that Underwriters committed fraud in the inducement by representing that the Policy provided coverage for a loss resulting from failure of a Morvillo customer to return or compensate Morvillo for goods delivered on a toll basis and also by paying Morvillo for a similar claim in 2002 as well by paying other policy holders for similar claims. See id. ¶¶ 57-60. Count III charges Underwriters with bad faith for their actions in connection with the claim. See id. ¶¶ 61-72. Count IV alleges that Underwriters are liable to Morvillo "on theories of Reliance and Estoppel." Id. ¶ 74.

Underwriters filed the instant Motion to Dismiss on April

24, 2006, seeking dismissal of Counts II and IV of Morvillo's Counterclaim pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). See Docket; Motion. Morvillo filed an objection to the Motion on May 22, 2006. See Docket; Defendants' Morvillo and Sons, Inc. and Lee's Manufacturing Co. Inc., Objection to Plaintiffs' Motion to Dismiss Counts II and IV of Defendants' Counterclaim (Doc. #17). Following the June 23, 2006, hearing, the Court took the matter under advisement.

**Law**

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the view the stated facts in the light most favorable to the pleader, In Re Credit Suisse First Boston Corp., 431 F.3d 36, 51 (1st Cir. 2005); see also Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F.Supp.2d 491, 493 (D.R.I. 1998), taking all well-pleaded allegations as true and giving the pleader the benefit of all reasonable inferences that fit the pleader's stated theory of liability, Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005); see also Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. See Brown v. Hot, Sexy & Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir. 1995); Hart v. Mazur, 903 F.Supp. 277, 279 (D.R.I. 1995). The Court "should not grant the motion unless it appears to a certainty that the [pleader] would be unable to recover under any set of facts." Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir. 1996); accord Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957); see also Arruda v. Sears, Roebuck & Co., 310 F.3d at 18 ("[W]e will affirm a Rule 12(b)(6) dismissal only if 'the factual averments do not justify recovery on some theory adumbrated in the complaint.'")(citation omitted).

The Court, however, is not required to "credit bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006)(internal quotation marks omitted); Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005)(same). Rule 12(b)(6) is forgiving, see Campagna v. Massachusetts Dep't of Envtl. Prot., 334 F.3d 150, 155 (1st Cir. 2003), but it "is not entirely a toothless tiger," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005)(quoting Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 67 (1st Cir. 2004)(quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989))). A plaintiff must allege facts in support of "each material element necessary to sustain recovery under some actionable legal theory." Campagna v. Massachusetts Dep't of Envtl. Prot., 334 F.3d at 155.

## Discussion

***Parties' Positions***

Underwriters contend that the transactions between Morvillo and BAW during the latter part of 2004 through January 2005 involved the sale of property by Morvillo to BAW and that any loss that occurred to the property after it was sold was not insured. See Plaintiffs' Memorandum of Law in Support of Their Motion to Dismiss Defendants' Second and Fourth Counterclaims ("Plaintiffs' Mem.") at 2. Underwriters further contend that any debt or contractual obligation that was owed to Morvillo after the sale was also not insured. Id.

On the other hand, Morvillo maintains that the property provided to BAW during the transaction was not sold but consigned to BAW on a toll basis, see Amended Answer ¶ 6, "akin ... to a bailment," Defendants' Morvillo and Sons, Inc. and Lee's Manufacturing Co. Inc., Memorandum in Support of Objection to Plaintiffs' Motion to Dismiss Counts II and IV of Defendants'

Counterclaims ("Defendants' Mem.") at 3. Morvillo further asserts that "Underwriters were well aware of this arrangement and understood the metals in the possession of third parties to be covered by [their] All Risk insurance policy." Id.

***Count II (Fraud in the Inducement)***

Plaintiffs seek dismissal of Count II on the ground that the Counterclaim does not set forth factual allegations regarding each element of a claim for fraud. See Plaintiffs' Mem. at 9. The essential elements of a cause of action for fraud in Rhode Island are: 1) that the defendant made a false representation; 2) that the defendant intended to induce the plaintiff to rely upon it; 3) that the plaintiff justifiably relied upon the false representation; and 4) that plaintiff suffered damage as a result. See Guzman v. Jan-Pro Cleaning Sys., Inc., 839 A.2d 504, 507 (R.I. 2003); Women's Dev. Corp. v. City of Central Falls, 764 A.2d 151, 160 (R.I. 2001). "In order to survive a motion to dismiss, plaintiffs must set forth 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." Doyle v. Hasbro, 103 F.3d 186, 190 (1st Cir. 1996) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Morvillo concedes that it "has not plead facts sufficient to sustain such a claim at this time, but requests that the Count be dismissed without prejudice, so that if such facts are established through discovery, a Motion may be brought to add a claim for Fraud." Defendants' Mem. at 2. Specifically, Morvillo argues that "if discovery reveals that Underwriters intended at the inception of the Policy, or at the annual renewal periods, that there would be no coverage for a loss such as this, then Morvillo would and should seek to add a Count for Fraud in the Inducement." Id. at 6.

The Court is not persuaded by this argument. The

allegations of fraud which Morvillo has made in its Counterclaim do not come close to satisfying the requirements of Fed. R. Civ. P. 9(b).[4] Although Morvillo alleges in conclusory fashion that Underwriters made representations that the Policy provided coverage to Morvillo for goods delivered on a toll basis to customers of Morvillo and that the Policy covered a loss like the one at issue here, see Counterclaim ¶¶ 26, 53, Morvillo fails to identify who made these representations on behalf of Underwriters or when they were made. See id. Morvillo's position appears to be that if it uncovers evidence that representations made by Underwriters were false, it should be permitted to file another count for fraud in the inducement, alleging not only that the representations were false, but also revealing for the first time who it contends made the representations and when they were made.

The Court sees no reason why Morvillo should be given two bites at the proverbial apple. Permitting Morvillo to conduct discovery relative to a potential fraud claim would be inappropriate when Morvillo has not even provided Rule 9(b) particularity regarding those elements of fraud which presumably should already be within its knowledge. See Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 116 (2nd Cir. 1982)("Rule 9(b) will have failed in its purpose if conclusory generalizations such as these will permit a plaintiff to set off on a long and expensive discovery process in the hope of uncovering some sort of wrongdoing or of obtaining a substantial settlement."); see also

---

[4] Fed. R. Civ. P. 9 provides in relevant part:

> **(b) Fraud, Mistake, Condition of the Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b).

Wayne Inv., Inc. v. Gulf Oil Corp., 739 F.2d 11, 13 (1st Cir. 1984)("Rule 9 operates to diminish the possibility that a plaintiff with a largely groundless claim [will be able] to simply take up the time of a number of other people [by extensive discovery], with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence ....")(alterations in original)(internal citations omitted); Haft v. Eastland Fin. Corp., 755 F.Supp. 1123, 1127 (D.R.I. 1991) (recognizing that one of the purposes of Rule 9(b) is "to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'"[5]).

This is not a situation where Morvillo's claim for fraud in the inducement is deficient in only one respect and that if this omission were remedied the claim would otherwise pass muster. The allegations pled fall far short of satisfying the requirements of either Rule 9(b) or the elements for a claim for fraud, see Guzman v. Jan-Pro Cleaning Sys., Inc., 839 A.2d at 507. Accordingly, for the reasons stated above, I recommend that Count II be dismissed with prejudice.

***Count IV Reliance and Estoppel***

In Count IV of its Counterclaim, Morvillo alleges in cursory fashion that "Underwriters are liable to Morvillo and Lee's on theories of Reliance and Estoppel," Counterclaim ¶ 74, and that "Morvillo and Lee's have been damaged as a result of ... Underwriters' violations," id. ¶ 75. The Rhode Island Supreme Court has explained that for the doctrine of equitable estoppel to apply in the context of insurance coverage:

---

[5] In the First Circuit, the definition of a strike suit "include[s] largely groundless suits brought to increase the settlement value of the case." Haft v. Eastland Fin. Corp., 755 F.Supp. 1123, 1127 n.6 (D.R.I. 1991).

> the insured must show (1) that he was misled by the acts or statements of the insurer or its agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable; and (4) detriment or prejudice suffered by the insured based on the reliance.

Zarrella v. Minnesota Mut. Life Ins. Co., 824 A.2d 1249, 1260 (R.I. 2003)(internal quotation marks omitted). However, a "court ... may not invoke the doctrine of equitable estoppel to expand the scope of coverage of an insurance policy." Id.; accord D'Antuono v. Narragansett Bay Ins. Co., 721 A.2d 834, 836 (R.I. 1998); see also Martinelli v. Travelers Ins. Cos., 687 A.2d 443, 447 (R.I. 1996)(agreeing that estoppel cannot be invoked to expand the scope of an insurance policy). In addition, "quasi-contractual remedies such as equitable estoppel are inapplicable when the parties are bound by an express contract." Zarrella v. Minnesota Mut. Life Ins. Co., 824 A.2d at 1260.

Citing these limitations, Underwriters argues that the estoppel claim must be dismissed. See Plaintiffs' Mem. at 18-21. Morvillo responds that the "policy language ... in this case is not express and unambiguous ...," Defendants' Mem. at 9, and suggests that this circumstance allows Morvillo to invoke the doctrine of equitable estoppel, see id. While it is true that the Rhode Island Supreme Court in Zarrella referred to the trial justice's determination that "the doctrine of equitable estoppel did not apply because plaintiff and defendant had an express, unambiguous insurance contract," Zarrella, 824 A.2d at 1260, the court gave no indication that it was retreating from its declaration in D'Antuono that:

> In Martinelli v. Travelers Insurance Companies, 687 A.2d 443, 447 (R.I. 1996), we cited with approval the cases of Pedersen v. United Services Automobile Association, 383 N.W.2d 427, 430-31 (Minn. Ct. App. 1986), and ABCD ... Vision, Inc. v. Fireman's Fund Insurance Companies, 304 Or. 301, 744 P.2d 998, 1001-02 (Or. 1987). In Pedersen, that court stated that: "The doctrine of estoppel will

> not operate to enlarge the coverage of an insurance policy. *** Coverage may not be imposed upon an insurer for a risk not specifically undertaken by the insurer and for which no consideration has been paid." 383 N.W.2d at 430. Likewise in the ABCD ... Vision, Inc., case, the court stated that "[e]stoppel cannot be invoked to expand insurance coverage or the scope of an insurance contract." 744 P.2d at 1001.

D'Antuono v. Narragansett Bay Ins. Co., 721 A.2d at 836 n.1 (alterations in original). Given the above unqualified endorsement of the principle that estoppel cannot be used to expand the coverage of an insurance policy, this Magistrate Judge does not read Zarrella as holding that an exception to that principle exists where the insurance policy is ambiguous. To the extent that the Zarrella opinion suggests to the contrary, this Magistrate Judge views such statements as dicta.[6] Accordingly, Morvillo's counterclaim for reliance and estoppel should be dismissed because the doctrine of estoppel cannot be used to expand the scope of coverage under an insurance policy and in the instant matter, if the loss is not covered under the Policy, expansion would be necessary in order for Morvillo to prevail on Count IV of its Counterclaim. Cf. Martinelli v. Travelers Ins. Cos., 687 A.2d 443, 447 (R.I. 1996)("Because the Travelers policy provided no coverage for the claim in question, the doctrine of

---

[6] The language in Zarrella which could be viewed as suggesting such an exception is set forth below:

> In this case, the trial justice held that the doctrine of equitable estoppel did not apply because plaintiff and defendant had an express, unambiguous insurance contract. Because the doctrine of equitable estoppel shall not apply to unambiguous contracts or to enlarge the scope of insurance benefits, there are no set of facts under which plaintiff could prevail on this theory.

Zarrella, 824 A.2d at 1260 (footnotes omitted).

estoppel did not bar the insurer from asserting that defense against coverage of the loss.").

Underwriters also seek dismissal of Count IV on the ground that Morvillo has not alleged the elements of a claim for estoppel. See Plaintiffs' Mem. at 21-23. This Court has already quoted the elements which Morvillo must establish to succeed on a claim for estoppel. See Discussion supra at 11 (quoting Zarrella, 824 A.2d at 1260). The first element requires that Morvillo show that it "was misled by the acts or statements of the insurer or its agent ...." Id. Contending that it has adequately pled an estoppel claim, Morvillo argues:

> Read as a whole the Counterclaim establishes that Underwriters **understood** the nature of Morvillo's business; that they **understood** Morvillo's course of conduct with its customers, including its use of toll based transactions; and that Underwriters **understood** that Morvillo had an insured interest in metals provided to customers on a toll basis. Underwriters charged Morvillo and Morvillo paid an additional premium for the off-premises/third parties coverage. Plaintiffs offered the same All Risk policy over the course of several years. In fact, as set in the Counterclaims, it is alleged that Plaintiffs[] acknowledged that its All Risk policy specifically covered the very loss Defendants now seek to recover.

Defendants' Mem. at 10 (citing Counterclaim ¶¶ 27-32)(bold added).

The Court is unpersuaded by this argument. Even assuming that Underwriters "understood" the nature of Morvillo's business and Morvillo's course of conduct with its customers, such knowledge and understanding do not constitute, nor are they equivalent to, "acts or statements of the insurer or its agent," Zarrella, 824 A.2d at 1260. Although Morvillo asserts in conclusory fashion that Underwriters made "representations that the Policy provided coverage to Morvillo for goods delivered on a toll basis to customers of Morvillo ...," Counterclaim ¶ 26, this

is inadequate to prevent dismissal, see Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (2006)(stating that court should not "credit bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like")(internal quotation marks omitted); Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005)(same); Campagna v. Massachusetts Dep't of Envtl. Prot., 334 F.3d 150, 155 (1st Cir. 2003)(holding that a plaintiff must allege facts in support of "each material element necessary to sustain recovery under some actionable legal theory")(quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

In summary, Morvillo's claim for reliance and estoppel is barred because: 1) the doctrine of equitable estoppel may not be used to expand the scope of an insurance policy and 2) Morvillo has failed adequately to plead the elements of the claim. Accordingly, Count IV should be dismissed for these reasons, and I so recommend.

**Conclusion**

For the reasons stated above, I recommend that Plaintiffs' Motion to Dismiss be granted and that Defendants' second and fourth counterclaims be dismissed. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

DAVID L. MARTIN
United States Magistrate Judge
July 14, 2006