UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and THE WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19<br><br>Plaintiffs,<br><br>-vs.-<br><br>MORVILLO AND SONS, INC.; and LEE'S MANUFACTURING CO. INC.,<br><br>Defendant | : | CA No: 06-33T |

**MOTION TO SEVER**

Now come the Plaintiffs, THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19 (henceforth, collectively referred to herein as "Underwriters"), by their attorneys Carroll, Kelly & Murphy and, on the basis of the accompanying memorandum of law, dated November 16, 2006, move for an order: (i) severing the defendants', MORVILLO AND SONS, INC. and LEE'S MANUFACTURING CO. INC. (henceforth "Defendants"), Third Counterclaim for Bad Faith from the above captioned matter pursuant to Rule 21 of the Federal Rules of Civil Procedure ("FRCP"), and staying the adjudication of Defendants' Third Counterclaim for Bad Faith pending a determination of Defendants' First Counterclaim for Breach of Contract and the Underwriters' claims as to coverage; or (ii) in the alternative, for a separate trial of Defendants' Third Counterclaim for Bad Faith, pursuant to FRCP Rule

42(b), and staying the adjudication of Defendants' Third Counterclaim for Bad Faith pending a determination of Defendants' First Counterclaim for Breach of Contract and the Underwriters' claims as to coverage.

CARROLL, KELLY & MURPHY

/s/C. Russell Bengtson
C. Russell Bengtson (1233)
One Turks Head Place, Suite 400
Providence, Rhode Island 02903
Tele. No.: (401) 331-7272
Fax No.: (401) 331-4404
rbengtson@ckmlaw.com

CERTIFICATION

I hereby certify that on November 16, 2006, a true copy of the within document was filed electronically and is available for viewing and downloading from the ECF system and that J. Scott Kilpatrick, Esq., jskilpatrick@cck-law.com, will receive notice through the ECF system.

/s/C. Russell Bengtson

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and THE WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19 | : | |
| Plaintiffs, | : | |
| -vs.- | : | CA No: 06-33T |
| MORVILLO AND SONS, INC.; and LEE'S MANUFACTURING CO. INC., | : | |
| Defendant | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION**
**<u>TO SEVER DEFENDANTS' THIRD COUNTERCLAIM FOR BAD FAITH</u>**

Plaintiffs, THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19 (henceforth, collectively referred to herein as "Underwriters"), by their attorneys Carroll, Kelly & Murphy, respectfully submit this Memorandum of Law in support of their motion to for an order: (i) severing the defendants', MORVILLO AND SONS, INC. and LEE'S MANUFACTURING CO. INC. (henceforth "Defendants"), Third Counterclaim for Bad Faith from the above captioned matter pursuant to Rule 21 of the Federal Rules of Civil Procedure ("FRCP"), and staying the adjudication of Defendants' Third Counterclaim for Bad Faith pending a determination of Defendants' First Counterclaim for Breach of Contract and the Underwriters' claims as to coverage; or (ii) in the alternative, for a separate trial of

Defendants' Third Counterclaim for Bad Faith, pursuant to FRCP Rule 42(b), and staying the adjudication of Defendants' Third Counterclaim for Bad Faith pending a determination of Defendants' First Counterclaim for Breach of Contract and the Underwriters' claims as to coverage.

**STATEMENT OF FACTS**

This action was commenced by Underwriters because they do not agree with defendant Morvillo over whether an insurance claim that was submitted by Morvillo was covered pursuant to the terms of the contract of insurance numbered BB 040010/19 (the "Policy"). At the heart of the disagreement lie a series of transactions between Morvillo and a third party, Bangles Around the World ("BAW") whereby Morvillo delivered manufactured gold jewelry components to the third party and was paid -- in pure gold -- for some but not all of the property delivered. Briefly summarized, Underwriters' view is that the transactions involved the sale of property. The failure of the third party to pay for that property sold was not insured under the Policy. The fact that the underlying transactions in this case involved the exchange of pure gold -- instead of currency -- for manufactured gold jewelry components should not alter fundamental insurance and sales principles in the view of Underwriters.

In an attempt to distract the Court and Underwriters from the core issues at hand (i.e. the nature of the transactions and the scope of coverage under the insurance policy), Morvillo alleged counterclaims for fraud, estoppel, and bad faith. Underwriters have successfully moved to dismiss the counterclaims for fraud and estoppel. *See* Order Granting Motion to Dismiss Second and Fourth Counterclaims, issued by Judge Ernest C. Torres, dated July 13, 2006 and the Report and Recommendation by Magistrate Judge

David L. Martin, dated July 14, 2006. Morvillo did not object to the Report and Recommendation and thus waived any right to appeal the Order. Therefore, the only remaining claims in the litigation are the dispute regarding coverage, and Morvillo's counterclaim for Bad Faith.

Morvillo's Bad Faith claim threatens to unnecessarily increase the scope, time and cost of discovery in this matter by expanding the inquiry far beyond the discrete coverage issue at the heart of this dispute relating to the transactions between Morvillo and BAW. The existence of the bad faith claim could give Morvillo license to engage in an unwieldy fishing expedition, that threatens to take the parties and the court into other claims, involving underwriters and insureds who are not party to this action. Indeed the conduct of Morvillo in this litigation to date leaves little doubt that the threat is real. In connection with its estoppel claim Morvillo alleged that Underwriters had previously paid a claim exactly like the one at issue in this litigation, yet when the facts of that claim were described to Magistrate Judge Martin during oral argument the Court rejected any similarity in the claim to the underlying facts.

Notably, in the event that the coverage issue is decided in favor of Underwriters, the need for further litigation on the Bad Faith claim will virtually be eliminated. Therefore, if Underwriters prevail on the coverage issue, none of the additional expense and time threatened by the litigation of the Bad Faith claim should be necessary.

No doubt, Morvillo will raise an objection to this point on the basis of the Supreme Court of Rhode Island's 2002 decision in, *Skaling v. Aetna Insurance Company*, 799 A.2d 997. In *Skaling*, the Court held that, under certain circumstances, a bad faith claim could be established even where the insurer prevails on the coverage issue.

However, in so ruling the *Skaling* Court was clear that such a bad faith claim would require that the insurer "either intentionally or recklessly failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review." Skaling, 799 A.2d at 1011. However, Underwriters submit that the undisputed facts in this case prevent any reasonable contention that the exception articulated in *Skaling* could apply in this case.

Here, it is not disputed that during the investigation of Morvillo's claim Underwriters were provided documents by Morvillo, which were created by Morvillo (with Morvillo's name pre-printed on them). Nor is it disputed that those Morvillo documents describe the manufactured gold jewelry components as being "sold" to the third-party, BAW. It is also not disputed that Morvillo's controller was interviewed by an adjuster appointed by Underwriters in connection with the investigation, and that in that taped interview Morvillo's controller described the manufactured gold jewelry components as having been "sold." Moreover, when BAW is deposed in connection with the coverage dispute, Underwriters are certain that BAW will confirm that during Underwriters' investigation an adjuster interviewed BAW in connection with the transactions between BAW and Morvillo. Finally, the substance of Underwriters review and evaluation of the information obtained in the investigation was set forth in exhausting detail in the 208 paragraph declaratory judgment complaint, attaching more than 60 pages of exhibits, seeking an adjudication by the Court of whether Underwriters position was correct.

Based upon the foregoing, Underwriters do not believe that Morvillo's bad faith claim can survive, as a matter of law, if Underwriters prevail on the coverage issue.

Underwriters made their decision based almost entirely upon information it was provided by Morvillo, and (among other things) subjected that decision to the cognitive evaluation and review of this Court. Clearly, when the *Skaling* Court stated that "an intentional failure on the part of the insurer to determine whether there is a lawful basis to deny a claim, standing alone, is bad faith," it was not contemplating an insurer who reviewed all of the documentation provided by the insured, interviewed the insured about the documents and the claim, interviewed the other party to the transactions involved, then made a decision based upon the information and statements provided by the insured and its customer, and finally submitted its decision to judicial review.

A significant amount of resources have already been expended by both parties and the Court, as a result of Morvillo's efforts to expand the scope of this litigation with its insufficiently plead estoppel and fraud claims. Indeed, in response to Underwriters' motion to dismiss, Morvillo admitted that it had not plead sufficient facts to support a fraud claim, but included it with the hope that it could conduct discovery in the hope that maybe a fraud claim could be found. Magistrate Judge Martin denied Morvillo's request, in part, because the Federal Rules would not countenance such a fishing expedition. If it is not severed and stayed, the Bad Faith claim will give Morvillo the same fishing license they have been denied in connection with their other misguided claims.

From a practical standpoint, the amount in controversy in this matter, which is in the range of $150,000 to $212,000, does not justify unlimited legal expenses being incurred by either party, nor do the legal issues actually in dispute necessitate such a result. If the Bad Faith claim is severed, the discovery necessary to bring the core issues of this case to a head is limited. The most relevant factual circumstances surrounding the

underlying transactions between Morvillo and its customer BAW, are not disputed. Most if not all of the relevant transactional documents are attached as exhibits to the Complaint, and described fully therein. In addition, through its Amended Answer, the motion papers, and the oral argument on June 23, 2006, Morvillo has made numerous admissions in its effort to describe the transactions, which tend to support Underwriters position. Indeed, the primary disagreement between the parties goes to the legal nature or consequences of the transactions.

Allowing Morvillo to pursue its Bad Faith claim, before there is a determination as to coverage, will provide Morvillo an inappropriate vehicle to expand the scope of this coverage dispute far beyond the policy at issue and potentially into collateral litigation of the claims of other insureds. Moreover, it will subject Underwriters to the most invasive search of its claims files and procedure, before the court has even had an opportunity to determine whether Underwriters were legally justified and correct in their decision to deny the claim.

Therefore, Underwriters move this Court to exercise its discretion in the interest of fairness, justice and judicial economy, and sever Morvillo's counterclaim for Bad Faith from this matter.

**ARGUMENT**

**I. Morvillo's Counterclaim for Bad Faith Should Be Severed**

FRCP Rule 21states, in pertinent part, that "[a]ny claim against a party may be severed and proceeded with separately." A motion to sever a claim under Rule 21 is addressed to the Court's "broad discretion." *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000)( "As long as there is a discrete and separate claim, the district court

may exercise its discretion and sever it."); *Acedvedo Garcia v. Vera Monroig*, 204 F.R.D. 26, 29 (D.P.R. 2001); *Merril Lynch & Co., Inc. v. Research Reports Securities Lit.*, 214 F.R.D. 152, 155 (S.D.N.Y. 2003)("[T]his Court has broad discretion to sever claims and parties, so long as in doing so the Court furthers the aims of justice, promotes judicial economy and efficiency, and avoids prejudicing the rights of any party.") *Rice*, 209 F.3d at 1016.

Severing Morvillo's bad faith claim will promote judicial economy and efficiency. *See Merril Lynch*, 214 F.R.D. at 157 ("[J]udicial economy and efficiency are self-evidently furthered by severance in material ways [when] discovery burdens and associated expenses would operate expansively absent a severance.").[1] As set forth above, the scope of discovery in this matter will be significantly and unnecessarily increased if the Bad Faith claim is not severed.

Moreover, because the bad faith claim could be rendered moot if Underwriters prevail on the coverage issue, the prosecution of the bad faith claim before the coverage issue is decided risks the unnecessary expenditure of time and resources on a claim that may not be viable.

### A. The Court Should Stay The Prosecution of Morvillo's Bad Faith Claim Until The Coverage Dispute Is Resolved

The judicial economy and efficiency that will result from a decision to sever Morvillo's Counterclaim for Bad Faith (regardless of the procedural method used) is dependent, in large part, on the elimination of the immediate need to address the potential

[1] *See also Skaling v. Aetna Insurance Company*, 799 A.2d 997, 1010 (R.I. 2002)("[I]n this jurisdiction … claims of insurer bad faith are severed and tried separately from the breach of insurance contract claim, a procedure that provides the insurer with significant procedural protections, including nondisclosure of its file until the completion of the breach-of-contract action").

discovery involved in litigating that claim. Obviously, the continuation of discovery on Morvillo's Bad Faith claim, whether under a different index number or otherwise, would not foster any judicial economy or efficiency. Therefore, Underwriters request that any further prosecution of Morvillo's counterclaim for bad faith be stayed, pending the resolution of the underlying coverage dispute in this matter.

### II. In The Alternative, Morvillo's Counterclaim For Bad Faith Should Be Separated From All Of The Claims Relating To The Underlying Coverage Dispute.

Underwriters prefer that the Bad Faith claim be severed pursuant to FRCP Rule 21.[2] However, to the extent that the Court prefers the procedural mechanism available under Rule 42(b), Underwriters move in the alternative for such relief.

FRCP Rule 42(b) states in pertinent part, "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any … counterclaim … ." Unlike under Rule 21, in which the severed claim is no longer a part of the main action, under Rule 42 the claim is "bifurcated" rather than severed and thus remains as part of the same action. Notwithstanding that procedural distinction, motions under Rule 21 and 42 are generally decided on the same grounds. "The Court's determination as to whether it should sever the claims of Plaintiffs under Rule 21 or whether it should order separate trials under Rule 42 requires the same considerations, and are within the broad discretion of the District Court." *Acedvedo Garcia v. Vera Monroig*, 204 F.R.D. 26, 30 (D.P.R. 2001).

---

[2] Underwriters recognize that the procedural alternatives of severing/separating the bad faith claim Rule 21 or Rule 42(b) are, for the most part, similar in their ultimate effect. However, Rule 21 is favorable to Underwriters because it will enable the final adjudication of the coverage issue, notwithstanding any possible remaining disputes.

Therefore, the Court is respectfully referred to the arguments set forth above pertaining to Rule 21, which provide an equal basis for granting this motion under Rule 42.

**Conclusion**

The bad faith claim in this case should be severed (or bifurcated) from the coverage dispute, and stayed pending the resolution of the remaining claims, in order to save the parties and the court a lot of time, resources and money.

**WHEREFORE,** Plaintiffs move this Court to enter an order (i) severing Morvillo's Third Counterclaim for Bad Faith from the above captioned matter pursuant to FRCP Rule 21, and staying the adjudication of Defendants' Third Counterclaim for Bad Faith pending a determination of the underlying coverage dispute, including Defendants' First Counterclaim for Breach of Contract and/or Underwriters claims for declaratory judgment; or (ii) in the alternative, for a separate trial of Defendants' Third Counterclaim for Bad Faith, pursuant to FRCP Rule 42(b), and staying the adjudication of Defendants' Third Counterclaim for Bad Faith pending a determination of the underlying coverage dispute, including Defendants' First Counterclaim for Breach of Contract and/or Underwriters claims for declaratory judgment; and (iii) such other and further relief as the Court deems appropriate.

/s/C. Russell Bengtson
C. Russell Bengtson (1233)
Carroll, Kelly & Murphy
Counsel for Plaintiffs
One Turks Head Place, Suite 400
Providence, Rhode Island 02903
Tele. No.: (401) 331-7272
Fax No.: (401) 331-4404
rbengtson@ckmlaw.com

Owen B. Carragher, Jr.
Peter J. Rossi

Lankler & Carragher, LLP
845 Third Avenue
17th Floor
New York, NY 10022
Tel. No.: (212) 812-8910
Fax No.: (212) 812-8920
Admitted *pro hac vice*

CERTIFICATION

I hereby certify that on November 16, 2006, a true copy of the within document was filed electronically and is available for viewing and downloading from the ECF system and that J. Scott Kilpatrick, Esq., jskilpatrick@cck-law.com, will receive notice through the ECF system.

/s/C. Russell Bengtson