UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and THE WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19 | : | |
| Plaintiffs | : | C.A. No. 06-33T |
| vs. | : | |
| MORVILLO AND SONS, INC.; and LEE'S MANUFACTURING CO. INC., | : | |
| Defendants | : | |

**DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION TO SEVER**

Defendants and Counterclaiming Plaintiffs, Morvillo and Sons, Inc. and Lee's Manufacturing Co., Inc., (hereinafter referred to collectively, as "Morvillo") hereby object to Plaintiffs Motion to Sever Morvillo's Bad Faith counterclaim under either Rule 21 or Rule 42(b) of the Federal Rules of Civil Procedure. The grounds for the opposition are set forth in the accompanying Memorandum of Law filed herewith.

Respectfully submitted,

MORVILLO AND SONS, INC. and LEE'S
MANUFACTURING CO., INC.

/s/J. Scott Kilpatrick

J. Scott Kilpatrick, Esquire (#4036)
Chisholm Chisholm & Kilpatrick LLP
One Turks Head Place, Suite 1313
Providence, RI 02903
(401) 331-6300
(401) 421-3185 FACSIMILE
jskilpatrick@cck-law.com

**Certification of Service**

I hereby certify that on the 4th day of December, 2006, a true copy of the within document was filed electronically and is available for viewing and downloading from the ECF system and that C. Russell Bengtson, Esq., rbengtson@ckmlaw.com, will receive notice through the ECF system.

/s/J. Scott Kilpatrick

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOSE INTERESTED UNDERWRITERS<br>AT LLOYD'S, LONDON and THE<br>WURTTEMBERGISCHE VERSICHERUNGS AG<br>the subscribers to the contract of insurance<br>numbered BB 040010/19<br><br>Plaintiffs<br><br>vs.<br><br>MORVILLO AND SONS, INC.; and LEE'S<br>MANUFACTURING CO. INC.,<br><br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br><br><br><br>C.A. No. 06-33T |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION TO SEVER AND STAY DEFENDANTS' BAD FAITH CLAIM**

Defendants, Morvillo and Sons, Inc. and Lee's Manufacturing Co., Inc., (hereinafter collectively referred to as "Morvillo" or "Defendants") respectfully submit this memorandum in support of their accompanying Objection to Plaintiff's Motion To Sever Morvillo's Bad Faith counterclaim from Morvillo's Breach of Contract counterclaim. Defendants object on the grounds that Defendants' Breach of Contract claim and its Bad Faith claim overlap and share common questions of fact which warrant both claims being tried together in one jury trial. It is in the interest of judicial economy and preservation of the parties' resources to complete discovery of the claims together and try the cases together. Furthermore, Plaintiff has not demonstrated that it is prejudiced by non-severance, whereas Defendants would be unduly prejudiced if the actions are severed as it would require Defendants to prove the same set of facts in two separate proceedings and unduly delay resolution of its case.

**I. STATEMENT OF FACTS**

This action was commenced by Plaintiff as a Complaint seeking a declaration that they

do not owe insurance coverage under an "All Risk" insurance policy for a loss incurred by Defendants. In turn, Defendants counterclaimed alleging Breach of Contract, Estoppel, Bad Faith and Fraud. Defendants' Estoppel and Fraud counts were dismissed in July 2006. Plaintiff now seeks to sever and stay the Bad Faith claim until the Breach of Contract claim is resolved.

Some background is necessary to understand Morvillo's objection to severing its claims. Morvillo is in the business of fabricating precious metals, principally 24k gold, into various grades and shapes for use in manufacturing by its customers, and providing such metals to its customers on a toll basis. Pursuant to the toll arrangement, Morvillo charges a fee for the fabrication process, but provides the metal to customers to use at no additional charge. Morvillo and its customers refer to this practice as a *toll arrangement*, whereby the customer is expected to return gold of the same value to Morvillo within about ten (10) days. This is akin to the common practice in this region of banks "leasing" gold to its customers. When seeking coverage for this unique risk – coverage for Morvillo's interest in precious metals in the possession of third parties – this procedure was described to Morvillo's United States based insurance broker, and coverage was placed with syndicates at Lloyds, London. The coverage for this risk was provided for in an insurance policy issued to Morvillo, called an All Risk insurance policy. The All Risk policy at issue in this case provided coverage of Morvillo's precious metals while located both at Morvillo's premises *and* in respect of interest at third parties.

The claims in this suit stem from loss resulting from a series of transactions between Morvillo and a third party, Bangles Around the World ("BAW"), wherein Morvillo provided gold to BAW on a toll basis. BAW failed to return gold resulting in a substantial loss ($212,000.00 plus consequential damages) to Morvillo. Plaintiff now denies coverage alleging

that the series of BAW transactions was not a tolling arrangement, but were really "sales" to BAW, to which coverage does not extend. In reaching that conclusion, however, Plaintiff apparently ignores *inter alia* three substantial factors. First, the majority of the same underwriters paid Morvillo for a prior loss in 2002 under materially identical circumstances. Second, Plaintiff's characterization that the transactions with BAW were "sales" disingenuously relies on inarticulate use of the terms "sold" and "sale" in forms used by a Morvillo employee and in a recorded statement, without regard to the fact that Morvillo's forms and its actual practice have all the indicia of a tolling arrangement – indicating the amount of metal being delivered, the amount of the labor charge due, and the amount of metal due on the toll account. Third, Plaintiff's position that the transactions with BAW were sales ignores the precious metal industry's custom and standard practice in lending precious metal, and the fact that an insured may have an insurable interest in property aside from the actual molecules of which it is comprised.

Principal issues to be resolved by the trier of fact in both the Breach of Contract and Bad Faith claims include the knowledge and intent of the Underwriters when they: (a) agreed to provide the coverage; (b) honored the earlier claim; and (c) denied the claim in this case.

## II. ARGUMENT

Rule 42(b) provides that the Court may order separate trials of claims: (a) in furtherance of convenience; (b) to avoid prejudice; and (c) where separate trials will be conducive to expedition or economy. FRCP Rule 42 (b). Courts generally consider whether the issues to be tried separately: (1) are significantly different from one another; (2) are triable by jury or the court; (3) have a different discovery posture; 4) require the testimony of different witnesses and

documentary evidence; and 5) whether prejudice will result if severance is not granted. *See Stanley v. Bray Terminals, Inc.*, 197 F.R.D. 224, 230 (N.D.N.Y. 2000).

Severing the two counter-claims would cause inconvenience of the parties, and the Court; will create the real risk of prejudice to the parties; and will prolong the proceedings, likely resulting in duplication of efforts by the parties and the Court.

An issue central to the coverage and breach of contract claims is the intent of the parties when the coverage was written. Certainly, Morvillo understood the policy to cover the loss of gold through a toll arrangement while on third party premises. A key factual issue is whether the Plaintiff Underwriters in this case had the same understanding, or reasonably should have had the same understanding. Among other things, some of which cannot be known until discovery is under way, it must be determined what the Underwriters understood when they paid the aforementioned 2002 claim, which was materially the same as this one, before this coverage was written. Also, it must be determined whether Underwriters ignored or disregarded the tolling arrangement between Morvillo and BAW and whether it ignored or disregarded industry custom and usage. Material to these determinations will be the evidence available to Underwriters when the determinations were made, the timeliness and extent of their investigation, the facts and factors that they took into consideration, and the motives behind their determinations. These factors are germane to the bad faith claim as well.

Both claims involve common facts, common witnesses and common documentary evidence. Where there is an overlap between a coverage issue and counterclaims, the entire case should be heard by the same trier of fact. *See Progressive Northern Ins. Co. v. Bachman*, 314 F. Supp.2d 820, 833 (W.D. Wis 2004).

Discovery will be directed toward depositions of the underwriters themselves in London, England, the agents involved both in the United States (Birmingham, Alabama) and abroad (London, England), interrogatories, and document production and analysis. Experts are likely to be retained, and deposed. All of this to opine on the reasonable interpretation of the contract and the reasonable expectations of the insurers and the insured. These items of discovery are germane to the bad faith claims as well.

In the Memorandum in Support of its Motion to Sever, Plaintiff submits that Morvillo's Bad Faith counterclaim should be severed, or at least second trial held, and stayed so that the "coverage" dispute can be resolved. What Plaintiff really implies is that if the coverage/contract case is won by the Plaintiff, the bad faith claims will go away. This is the old rule of Rhode Island bad faith law – that if the coverage claim is resolved against Morvillo, then the Bad Faith Claim will be a nullity. *See Bartlett v. John Hancock Mutual Life Ins. Co.*, 538 A.2d 997, 1000 (1988). But, resolution of the coverage and breach of contract claims will not resolve bad faith claims in this case.

In *Skaling v. Aetna Insurance Co.*, 799 A.2d 997 (R.I. 2002), the Rhode Island Supreme Court held that a bad faith claim brought pursuant to R.I.G.L. § 9-1-33 may be proven by evidence that the insurer intentionally or recklessly failed to properly investigate the claim and subject the result to cognitive evaluation. *Id.* at 1012. The *Skaling* court held that the resolution of such issues shall be a question to be determined by the trier of fact. *Id*. at 1010. Likewise, the court stated that an insurer has an obligation to deal with its insured consistent with its implied in law obligations of good faith and fair dealing, even where the claim is debatable. *Id.* at 1011. The court also stated that insurer's failure to conduct an appropriate and timely investigation

may subject the insurer to bad faith, notwithstanding the merits of the coverage claim. *Id.* Even where a claim is fairly debatable, the court held stated that the insurer is obligated to engage in settlement discussions in an effort to relieve its insured from the burden and expense of litigation. *Id.* These are all manners in which the Defendants may prove, through much of the same discovery necessary to litigate the coverage and breach of contract claims, that the Underwriters committed actionable bad faith under Rhode Island law. Contrary, to the Plaintiffs' argument, these claims will survive and be determined by a jury, even if the Plaintiffs prevail on the coverage claims.

To complete discovery pertinent to the coverage claim, and then try the case, only to repeat the process for the determination of the reasonableness of the Plaintiff's investigation, the promptness of the investigation, the cognitive analysis the Plaintiffs' applied to the results of their investigation, and the good faith exhibited by the Plaintiff's, would be an onerous burden to place on the insured under these circumstances. Consider, for example, what this would mean to for the efficiency of deposing the individual underwriters, London agent and the Birmingham agent. Given the Plaintiffs' stated intent to sever the claims in order to restrict discovery on the coverage/contract matters, we should expect motions to limit the scope of these depositions. This would likely lead to an entire second round of depositions of the same out of town witnesses, not to mention experts, for the bad faith claims.

Contrary to this attempt to drown Morvillo with duplicative litigation, the Underwriters owe a fiduciary obligation to its insureds. It is interesting to note the Underwriters stated confidence in prevailing on the bad faith claim, in light of the *Skaling* language requiring mandating good faith dealing and negotiations toward settlement to avoid the cost of litigation,

where the Underwriters have made no effort to settle this claim. Morvillo paid premiums and believed that they were covered for a loss in excess of $200,000.00, plus consequential damages, only to have the claim delayed, not paid, have litigation commenced against it, and now have a motion filed to force two discovery periods and two trials. To deny severence would in no way prejudice Plaintiffs, but to sever the claims would prejudice Morvillo. In fact, this motion by the Underwriters may indeed be further factual support for the bad faith claims asserted by Morvillo.

Plaintiffs acknowledge that the rule of law has changed, but limits its acknowledgment to one of the several manners in which bad faith can now be established under *Skaling.* Plaintiff acknowledged only that a bad faith claim can be proven through intentional or reckless failure to properly investigate the claim or subject the results to cognitive evaluation. Plaintiff then argues that it makes no difference in this case because the evidence, which they briefly characterize in a two-dimensional conclusory manner, is such that the Bad Faith claim will not survive as a matter of law. Plaintiff's Memo, p. 6. Contrary to the Plaintiff's argument, Morvillo expects that there will be ample evidence of the various forms of bad faith under *Skaling*.

Plaintiff's intimations that inclusion of the bad faith claim will result in a fishing expedition is without basis and, to the extent that it is a concern, this can easily be dealt with by the Court less invasively through the rules governing discovery.

Plaintiff has identified no prejudice that would result from addressing these overlapping claims in a single action at the same time.

Plaintiff's motion seeks to convince the Court that the issues involved in this case are narrow and discrete and thus easily resolved. Plaintiffs' implied prognostications of a quick and efficient victory on the coverage/contract claims are highly unlikely to materialize given the

factual issues set forth above. Plaintiff's oversimplification of the case disregards factors critical to Defendants' countersuits. It further disregards the interconnection between the Breach of Contract claim and the Bad Faith claim, and the witnesses, documents and facts underlying each. Defendant moves the Court to enter an order denying Plaintiff's motion to sever and stay its Bad Faith counterclaim under either FRCP Rule 21 or FRCP Rule 42(b).

/s/J. Scott Kilpatrick

J. Scott Kilpatrick, Esquire (#4036)
Chisholm Chisholm & Kilpatrick LLP
One Turks Head Place, Suite 1313
Providence, RI 02903
(401) 331-6300
(401) 421-3185 FACSIMILE
jskilpatrick@cck-law.com

**Certification of Service**

I hereby certify that on the 4th day of December, 2006, a true copy of the within document was filed electronically and is available for viewing and downloading from the ECF system and that C. Russell Bengtson, Esq., rbengtson@ckmlaw.com, will receive notice through the ECF system.

/s/J. Scott Kilpatrick