UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and THE WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19 | CA No: 06-33T |
| Plaintiffs, | **PLAINTIFFS' REPLY MEMORANDUM OF LAW** |
| -vs.- | |
| MORVILLO AND SONS, INC.; and LEE'S MANUFACTURING CO. INC., | |
| Defendant | |

Plaintiffs, THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19 ("Underwriters"), by the undersigned attorneys, respectfully submit this Reply in response to defendants', MORVILLO AND SONS, INC. and LEE'S MANUFACTURING CO. INC. ("Morvillo") opposition to this motion for an order: (i) severing the Counterclaim for Bad Faith, and staying its adjudication; or (ii) in the alternative, for a separate trial of the Counterclaim for Bad Faith.

**PRELIMINARY STATEMENT**

When Morvillo accuses Underwriters of trying to oversimplify this case, the accusation is misdirected. The issues in this case are discrete and straight-forward, but Morvillo is unwilling to meet them head on. With the dismissal of its Fraud and Estoppel claims, Morvillo now hopes to use its bad faith claim as a basis for expansive discovery. Therefore, Morvillo advances a theory of coverage that is tangled up with its bad faith claim in a manner that finds no support in the facts or in the law, and its promise of judicial economy from litigating the potentially moot bad faith claim is hollow.

## ARGUMENT

### I. In The Absence Of A Determination Of Coverage There Is No Basis For The Bad Faith Claim To Survive

Morvillo avers that the law in Rhode Island has been changed with respect to whether a bad faith claim requires a determination of coverage. Morvillo states:

> What Plaintiff really implies is that if the coverage/contract case is won by the Plaintiff, the bad faith claim will go away. This is the old rule of Rhode Island bad faith law - that if the coverage claim is resolved against Morvillo, the Bad Faith Claim will be a nullity. Morvillo's Op. at page 5.

Morvillo correctly articulates Underwriters' position, but is incorrect in claiming that the "old rule" no longer applies. The basis for Morvillo's contention that the rule has changed is the ruling in *Skaling v. Aetna Insurance Company*, 799 A.2d 997 (R.I. 2002). In *Skaling*, the insured had already prevailed on the breach of contract issue (which had been severed), thus the question of an insured maintaining bad faith without establishing breach of the insurance contract was not before the Court. *See Id.* at 1000-1001. However, Morvillo seizes upon certain language in the case, which appears to be *dicta*, as the abrogation of the "old rule." [1]

In *Zarella v. Minnesota Mutual Life Ins. Co.*, 824 A.2d 1249, 1261 (R.I. 2003), the Rhode Island Supreme Court stated: "Under Rhode Island law, however, a plaintiff first must show that he or she is entitled to recover on the contract before he or she can prove that the insurer dealt with him or her in bad faith." In December 2003 the Supreme Court of Rhode Island again recognized the "old rule" as good law. In *Hardguittini v. City of Providence*, 837 A.2d 704, 705, the Court stated: "The Superior Court granted the [insurer's] motion [to sever] and the court stayed all discovery pertaining to the bad-

---

[1] In their memorandum of law supporting this motion, Underwriters did acknowledge that there was language in *Skaling* which suggested *Skaling* was modifying, in some limited fashion, the old rule. However, the post-*Skaling* decisions of the Court dispel any doubt regarding the vitality of the "old rule."

faith claim until final disposition of the remaining claims. Given our affirmance of the judgment in favor of [the insurer (denying coverage)], the bad-faith claim is now moot." Finally, in 2004, the Court stated that "before a bad-faith claim can even be considered, a plaintiff must prove that the insurer breached its obligation under the insurance contract." *Robinson v. Mayo*, 849 A.2d 351, 356 n.6 (R.I. 2004).

On at least three separate occasions, well after the *Skaling* opinion was written, the Supreme Court of Rhode Island has unequivocally stated that a bad faith claim cannot be maintained unless the insured first established that there was a breach of the insurance contract by the insurer. *See Supra*. This is the law in Rhode Island.

## II. The Litigation Of The Breach Of Contract Claim And The Bad Faith Claim Do Not Require Proof Of The Same Set Of Facts, And Would Not Lead To Duplicate Discovery

At its core, this case is simply a disagreement about the legal nature or consequence of certain transactions between Morvillo and its customer Bangles Around the World ("BAW"), and whether those transactions provide a basis for coverage. Underwriters' view is that the transactions involved the sale of Morvillo's property to BAW and that the only interest maintained by Morvillo was an unpaid debt or contractual obligation, neither of which are covered under the Policy. Morvillo has not argued that the Policy provides coverage for goods sold but not paid for. Instead, Morvillo maintains that the transactions were not sales.

Morvillo's latest story is that the transactions are "tolling arrangements." However, a "tolling arrangement" is not a recognized legal term in the law of personal

property.[2] Moreover, Morvillo's contention that coverage was denied because Underwriters have taken the position that the transactions were not "tolling arrangements" has no basis and is absurd.[3] The issue is not whether the transactions were "tolling arrangements" but did they give rise to a sale or a bailment. When that issue is before the Court, Underwriters are confident that they will be able to demonstrate that the UCC and the law of bailments will support the legal conclusion that the transactions were sales. Moreover, those courts which have considered the legal effect of similar "tolling arrangements" and "toll accounts" have reached the same conclusion.

Therefore, the core dispute in this case is discrete. The parties seek a judicial determination as to whether the transactions were sales or bailments. If the Court determines that the transactions were sales, there is no coverage because Morvillo cannot establish a right to indemnification for goods sold but not paid for. If, they are bailments, then the remaining coverage issue will be whether there was a physical loss of the property and, if so, whether such loss was fortuitous.

The primary purpose of severing the bad faith claim is to allow for the adjudication of this discrete coverage issue in the most efficient and non-prejudicial manner. As set forth above, if Underwriters prevail on the coverage issue the case is over. In order to refute the economy of litigating the coverage issues first, Morvillo claims that its bad faith allegation overlaps with its claim for coverage, but this is simply wrong. Morvillo's breach of contract claim does not require the same proof as its bad

---

[2] Neither the UCC nor the common law has yet to create a legal relationship distinct from a sale or a bailment called a "tolling arrangement." Therefore, Morvillo's averment that the underlying transactions have "all the indicia of a tolling arrangement" is without any legal meaning.

[3] Morvillo wants to imply that it purchased coverage for "tolling arrangements," yet the term "tolling arrangement" or "toll account" is not even mentioned in the Policy, which is attached as an exhibit to the Complaint.

faith claim. While it is true that the question of whether Underwriters breached the insurance contract is a dispositive element of the bad faith claim, it is not true that the question of whether Underwriters handled the claim in bad faith has any legal relevance as to whether the loss is covered by the policy.[4]

Finally, Morvillo's argument that severance will cause duplicative discovery fails for three reasons. First, there are at least four depositions (three in London) that would not be necessary if Underwriters prevail on the coverage issue. Those individuals possess personal knowledge of the claims handling and investigation, but have no personal knowledge of the underwriting of the contract. Second, Morvillo vaguely claims that the underwriters would need to be deposed twice, but presumably everything they know about the underwriting of the policy is discoverable in connection with the breach of contract issue. To the extent that Morvillo contends that Underwriters must be deposed regarding the claims handling, such depositions will not be necessary if there is no breach of contract. Finally, Rhode Island favors severing bad faith claims from the underlying breach of contract claims that they are based upon. *See Skaling*, 799 A.2d at 1010. It is submitted that in virtually all of those cases there are likely to have been fact witnesses with personal knowledge of separate facts relevant to both claims. Thus, the mere possibility of duplicate depositions (if the insured establishes a breach of the insurance contract), is obviously not a powerful consideration.

**WHEREFORE,** Plaintiffs move this Court to enter an order consistent with the request herein and for such other and further relief as the Court deems appropriate.

[4] Another example of Morvillo expanding the issues in this case are its arguments relating to 2002 claim. This was previously raised by Morvillo as a basis for Fraud and Estoppel. After the dismissal of those claims, its new position is that the 2002 claim somehow bears on the interpretation of this policy written three years later. Morvillo's argument looks like an attempt to resurrect the estoppel claim. Moreover, Morvillo has consistently failed to provide any detail as to circumstances giving rise to the 2002 claim.

Dated: Providence, Rhode Island
December 16, 2006

PLAINTIFFS
By their Attorneys,
CARROLL KELLY & MURPHY

/s/ C. Russell Bengtson
C. Russell Bengtson (1233)
One Turks Head Place, Suite 400
Providence, Rhode Island 02903
Tele. No.: (401) 331-7272
Fax No.: (401) 331-4404
rbengtson@ckmlaw.com

-and-

Owen B. Carragher, Jr.
Peter J. Rossi
Lankler & Carragher, LLP
845 Third Avenue, 17th Floor
New York, NY 10022
Tel. No.: (212) 812-8910
Fax No.: (212) 812-8920
Admitted *pro hac vice*