UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and THE WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19<br><br>Plaintiffs,<br><br>-vs.-<br><br>MORVILLO AND SONS, INC.; and LEE'S MANUFACTURING CO. INC.,<br><br>Defendant | **PLAINTIFFS' ANSWER TO DEFENDANT'S COUNTERCLAIMS**<br><br>CA No: 06-33T |

Plaintiffs, THOSE INTERESTED UNDERWRITERS AT LLOYD'S, LONDON and WURTTEMBERGISCHE VERSICHERUNGS AG the subscribers to the contract of insurance numbered BB 040010/19 (henceforth, collectively referred to herein as "Underwriters"), by their undersigned attorneys, hereby respond to the counterclaims of MORVILLO AND SONS, INC. and LEE'S MANUFACTURING CO., INC. ("Morvillo"), as follows:

1. Underwriters admit the allegations in paragraph 1.

2. Underwriters admit the allegations in paragraph 2.

3. Underwriters deny the allegations in paragraph 3, except admit that Morvillo sells its manufactured gold jewelry components to jewelry manufacturers and keeps track of those transactions in a bookkeeping account that it refers to as a toll account.

4. Underwriters deny the allegations in paragraph 4; except admit that part of the compensation it was to receive from BAW in exchange for the manufactured gold

jewelry components it sold BAW was an amount of cash that Morvillo refers to as a "labor charge."

5. Underwriters deny the allegations in paragraph 5.

6. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6; except, admit that Morvillo maintained records of how much pure gold it believed BAW owed to it.

7. Underwriters deny the allegations in paragraph 7, except admit that in the transactions involved in this dispute BAW's compensation to Morvillo for the manufactured gold jewelry components that it purchased was to have two parts: (i) an amount of cash referred to as a "labor charge"; and (ii) an amount of pure gold that was equal to whatever the amount of pure gold contained within the manufactured gold jewelry components that it purchased from Morvillo. At its own choice, BAW was alternatively entitled to pay cash for the dollar value of the pure gold amount.

8. Underwriters admit the allegations in paragraph 8.

9. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9.

10. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

11. Underwriters deny the allegations in paragraph 11 and respectfully refer the Court to the transactional documents for each of the transactions, as those documents shall speak for themselves.

12. Underwriters deny the allegations in paragraph 12, except admit that these Underwriters are subscribers to the contract of insurance numbered BB 040010/19 that is at issue in this case. That very specific contract had a policy period of February 1, 2005

to February 1, 2006. That contract was annexed to the complaint as Exhibit A and was referred to by Underwriters as the “Policy”. The defendant has confused matters in its counterclaim by claiming that there was a single unidentified insurance policy in place from 2001 onward that is applicable to the events at hand. It referred to the unidentified policy as the “Policy” in its counterclaim. Therefore, to avoid any confusion herein, Underwriters shall henceforth refer to the relevant policy (numbered BB 040010/19) as the “2005 Policy”, which is the same document referred to as the “Policy” in Underwriters’ Complaint and attached as Exhibit A thereto.

13. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13; to the extent the allegations refer to the 2005 Policy, Underwriters deny the allegations and respectfully refer the Court to the terms and conditions of the 2005 Policy which shall speak for themselves.

14. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14; to the extent the allegations refer to the 2005 Policy, Underwriters deny the allegations and respectfully refer the Court to the terms and conditions of the 2005 Policy which shall speak for themselves.

15. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15; to the extent the allegations refer to the 2005 Policy, Underwriters admit that there was a peak season increase for the period of September, October and November 2005 and deny that the peak season increase is applicable.

16. Underwriters deny the allegations in paragraph 16; except admit, that a portion of the premium was attributable to “Part V” set forth in the 2005 Policy. Underwriters deny that “Part V” applies in this case.

17. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

18. Underwriters deny the allegations in paragraph 18.

19. Underwriters deny the allegations in paragraph 19.

20. Underwriters deny the allegations in paragraph 20. The terms and conditions of the 2005 Policy shall speak for themselves.

21. Underwriters deny the allegations in paragraph 21. The terms and conditions of the 2005 Policy shall speak for themselves.

22. Underwriters deny the allegations in paragraph 22; except admit, that a portion of the premium was attributable to “Part V” set forth in the 2005 Policy. Underwriters deny that “Part V” applies in this case.

23. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 and note that Morvillo’s allegations are inconsistent with paragraph 12; except admit, that Morvillo paid its premiums for the 2005 Policy.

24. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24; except admit, that there have been no material changes to the 2005 Policy.

25. Underwriters deny the allegations in paragraph 25; except admit, that the application contained representations made by Morvillo to Underwriters. Moreover, the 2005 Policy was drafted by Morvillo’s agents and will speak for itself.

26. Underwriters deny the allegations in paragraph 26.

27. The allegations contained in paragraph 27 relate to Morvillo’s Second and/or Fourth Counterclaim for Fraud and Estoppel, which have been dismissed pursuant to the

Order Granting Motion to Dismiss Second and Fourth Counterclaims, issued by Judge Ernest C. Torres, dated November 13, 2006 (the "Dismissal Order"). To the extent such allegations are deemed to relate to either of the existing Counterclaims, Underwriters deny the allegations in paragraph 27. The terms and conditions of the 2002 policy and the 2005 Policy shall speak for themselves.

28. The allegations contained in paragraph 28 relate to counterclaims which have been dismissed pursuant to the Dismissal Order. To the extent such allegations are deemed to relate to either of the existing Counterclaims, Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28, except admit that a claim was paid by the underwriters subscribing to the 2002 Policy.

29. The allegations contained in paragraph 29 relate to Morvillo's Second and/or Fourth Counterclaim for Fraud and Estoppel, which have been dismissed pursuant to the Dismissal Order. To the extent such allegations are deemed to relate to either of the existing Counterclaims, Underwriters deny the allegations in paragraph 29; except admit upon information and belief Alayna committed a theft/larceny/conversion of manufactured gold jewelry components.

30. The allegations contained in paragraph 30 relate to Morvillo's Second and/or Fourth Counterclaim for Fraud and Estoppel, which have been dismissed pursuant to the Dismissal Order. To the extent such allegations are deemed to relate to either of the existing Counterclaims, Underwriters admit the allegations in paragraph 30.

31. The allegations contained in paragraph 31 relate to Morvillo's Second and/or Fourth Counterclaim for Fraud and Estoppel, which have been dismissed pursuant to the Dismissal Order. To the extent such allegations are deemed to relate to either of the existing Counterclaims, Underwriters deny the allegations in paragraph 31; except, admit

upon information and belief that the underwriters for the 2002 policy made a payment based primarily upon representations made by the insured.

32. The allegations contained in paragraph 32 relate to Morvillo's Second and/or Fourth Counterclaim for Fraud and Estoppel, which have been dismissed pursuant to the Dismissal Order. To the extent such allegations are deemed to relate to either of the existing Counterclaims, Underwriters deny the allegations in paragraph 32.

33. Underwriters admit upon information and belief the allegations in paragraph 33.

34. Underwriters deny the truth of the allegations in paragraph 34; except, admit that Morvillo and BAW engaged in a series of sales transaction over several years which included the transactions which gave rise to this dispute.

35. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35. The transaction documents will speak for themselves and their legal effect will be a question of law for this Court.

36. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36. The transaction documents will speak for themselves and their legal effect will be a question of law for this Court.

37. Underwriters deny the allegations in paragraph 37. The transaction documents will speak for themselves. Moreover, it is respectfully noted that, even a cursory review of the invoices shows that in addition to a cash "labor charge," the invoices include the amount of pure gold owed to Morvillo by BAW.

38. Underwriters deny the allegations in Paragraph 38.

39. Underwriters deny the allegations in Paragraph 39; except admit, that the records that Morvillo maintained recorded the amount of the gold debt that was owed by BAW to Morvillo calculated in pure fine gold instead of money.

40. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40.

41. Underwriters deny allegations in paragraph 41 to the extent that the description of the transactions is incomplete and/or inaccurate. For a detailed and accurate description of the transactions, the Court is respectfully referred to paragraphs 72 through 172 of Underwriters Complaint, as well as the transaction documents attached as exhibits D through J, which will speak for themselves.

42. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42. For a detailed and accurate description of the transactions, the Court is respectfully referred to paragraphs 72 through 172 of Underwriters Complaint, as well as the transaction documents attached as exhibits D through J, which will speak for themselves. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 that "this was the first time that BAW's toll account was not effectively zeroed with a new delivery."

43. Underwriters deny allegations in paragraph 43 to the extent that the description of the transactions is incomplete and/or inaccurate. For a detailed and accurate description of the transactions, the Court is respectfully referred to paragraphs 72 through 172 of Underwriters Complaint, as well as the transaction documents attached as exhibits D through J, which will speak for themselves.

44. Underwriters deny the allegations in paragraph 44; except admit, that Morvillo has alleged that BAW has an outstanding balance of approximately 501 ounces of pure gold owed to Morvillo as compensation for the manufactured gold jewelry components that were sold and delivered to BAW.

45. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45.

46. Underwriters deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46.

47. Underwriters deny the allegations in Paragraph 47.

48. Underwriters admit the allegations in Paragraph 48.

49. Underwriters deny the allegations in Paragraph 49.

50. Underwriters deny the allegations in Paragraph 50; except, admit that on or about December 19, 2005, Morvillo executed a proof of loss despite explicit instruction to the contrary by Underwriters. That hostile proof of loss was delivered to Underwriters in London by Morvillo's broker on December 28, 2005. That proof of loss attributed a value of $217,968 to the unpaid pure gold debt that B.A.W. owed to Morvillo.

51. Underwriters deny the allegations in Paragraph 51; except, admit that Underwriters disclaimed coverage for the Claim that was made by Morvillo pertaining to the debt allegedly owed to it by BAW.

52. Underwriters deny the allegations in Paragraph 52; the basis for Underwriters' denial is set forth in great detail in the Complaint and the Court is respectfully referred thereto.

53. Underwriters deny the allegations in Paragraph 53.

**As and for the First Counterclaim for Brach of Contract**

54. As to the allegations in Paragraph 54, Underwriters repeat and re-allege their answers to Paragraphs 1 through 53, as if fully set forth herein.

55. Underwriters deny the allegations in Paragraph 55.

56. Underwriters deny the allegations in Paragraph 56.

**As and for the Second Counterclaim for Fraud in the Inducement**

57. The Second Counterclaim was dismissed pursuant to the Dismissal Order. To the extent the allegations in Paragraph 57 can be applied to the remaining counterclaims, Underwriters repeat and re-allege their answers to Paragraphs 1 through 56, as if fully set forth herein.

58. The Second Counterclaim was dismissed pursuant to the Dismissal Order. To the extent the allegations in Paragraph 58 can be applied to the remaining counterclaims, Underwriters deny the allegations in Paragraph 58.

59. The Second Counterclaim was dismissed pursuant to the Dismissal Order. To the extent the allegations in Paragraph 59 can be applied to the remaining counterclaims, Underwriters deny the allegations in Paragraph 59.

60. The Second Counterclaim was dismissed pursuant to the Dismissal Order. To the extent the allegations in Paragraph 60 can be applied to the remaining counterclaims, Underwriters deny the allegations in Paragraph 60.

**As and for the Third Counterclaim for Bad Faith**

61. As to the allegations in Paragraph 61, Underwriters repeat and re-allege their answers to Paragraphs 1 through 60, as if fully set forth herein.

62. Underwriters deny the allegations in Paragraph 62.

63. Underwriters deny the allegations in paragraph 63.

64. Underwriters deny the allegations in paragraph 64.

65. Underwriters deny the allegations in paragraph 65.

66. Underwriters deny the allegations in paragraph 66.

67. Underwriters deny the allegations in paragraph 67; except, admit that they made no offer to compromise as there is no coverage for the Claim and no requirement that Underwriters compromise claims for which there is no coverage.

68. Underwriters deny the allegations in paragraph 67; except, admit that they made no offer of settlement as there is no coverage for the Claim and no requirement that Underwriters settle claims for which there is no coverage.

69. Underwriters deny the allegations in paragraph 69.

70. Underwriters deny the allegations in paragraph 70.

71. Underwriters deny the allegations in Paragraph 71.

72. Underwriters deny the allegations in paragraph 72.

**As and for the Fourth Counterclaim for Reliance and Estoppel**

73. The Fourth Counterclaim was dismissed pursuant to the Dismissal Order. To the extent the allegations in Paragraph 73 can be applied to the remaining counterclaims, Underwriters repeat and re-allege their answers to Paragraphs 1 through 72, as if fully set forth herein.

74. The Fourth Counterclaim was dismissed pursuant to the Dismissal Order. To the extent the allegations in Paragraph 74 can be applied to the remaining counterclaims, Underwriters deny the allegations in Paragraph 74.

75. The Fourth Counterclaim was dismissed pursuant to the Dismissal Order. To the extent the allegations in Paragraph 75 can be applied to the remaining counterclaims, Underwriters deny the allegations in Paragraph 75.

**FIRST AFFIRMATIVE DEFENSE**

Morvillo has failed to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

There was no physical loss or damage to insured property.

**THIRD AFFIRMATIVE DEFENSE**

All of the relevant transactions between Morvillo and BAW constituted the sale of manufactured gold jewelry components. Upon the completion of those sales the manufactured gold jewelry components were no longer insured property under the 2005 Policy.

**FOURTH AFFIRMATIVE DEFENSE**

Upon the completion of each delivery of manufactured gold jewelry components from Morvillo to BAW, all rights, title and interest in the manufactured gold jewelry components passed to BAW. Morvillo retained no insurable interest in the manufactured gold jewelry components after the sales to BAW.

**FIFTH AFFIRMATIVE DEFENSE**

Upon the completion of each delivery by Morvillo to BAW, Morvillo retained only a contractual obligation from BAW to pay a debt, which could be paid either with a form of gold or money. Any outstanding debts or contractual obligations that BAW may owe to Morvillo were not insured under the 2005 Policy.

**SIXTH AFFIRMATIVE DEFENSE**

There was no fortuitous loss of insured property.

**SEVENTH AFFIRMATIVE DEFENSE**

Morvillo has failed to mitigate its damages.

**EIGHTH AFFIRMATIVE DEFENSE**

Morvillo has failed to act in good faith.

**NINNTH AFFIRMATIVE DEFENSE**

Morvillo's claims are barred by the doctrine of Estoppel.

**TENNTH AFFIRMATIVE DEFENSE**

Morvillo's claims are barred by the doctrine of Laches.

**ELEVENTH AFFIRMATIVE DEFENSE**

Morvillo is not entitled to the relief it seeks because of the doctrine of Unclean Hands.

**TWELFTH AFFIRMATIVE DEFENSE**

Morvillo's claims are barred by the doctrine of Waiver.

**THIRTEENTH AFFIRMATIVE DEFENSE**

The contract specified as follows: "Sum Insured V of this insurance affords coverage in the event of the failure of a third party responding to a physical loss of, or damage to, the insured interest."

This provision acts as a condition precedent to coverage which was not satisfied for the BAW Claim. Morvillo failed to fully and faithfully expend the necessary efforts to obtain payment for the manufactured gold jewelry components in question.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Underwriters reserve the right to raise any additional defenses to coverage that any further investigation in this matter may disclose. To the extent that any allegations contained in paragraphs 1 through 75 can be deemed to relate directly or indirectly to the Second and Fourth counterclaims which have been dismissed, Underwriters reserve the write to argue that such allegations are rendered moot by the Dismissal Order and are no longer relevant to the remaining issues in dispute and any response to those allegations shall not be deemed a waiver of any arguments relating to the dismissal of the claims allegedly supported by those allegations.

WHEREFORE, Underwriters pray that the Court enter judgment against defendants, Morvillo and Sons, Inc. and Lee's Manufacturing Co., Inc., dismissing the remaining counterclaims in their entirety, granting Underwriters the costs of this action and granting such other, further and different relief as the Court deems just and proper.

Dated: Providence, Rhode Island

January 16, 2007

/s/ C. Russell Bengtson
C. Russell Bengtson (1233)
Carroll, Kelly & Murphy
Counsel for Plaintiffs
One Turks Head Place, Suite 400
Providence, Rhode Island 02903
Tele. No.: (401) 331-7272
Fax No.: (401) 331-4404

Owen B. Carragher, Jr.
Peter J. Rossi
Lankler & Carragher, LLP
845 Third Avenue, 17th Floor
New York, NY 10022
Tel. No.: (212) 812-8910
Fax No.: (212) 812-8920
Admitted *pro hac vice*

CERTIFICATION

I hereby certify that on January 16, 2007 a true copy of the within document was filed electronically and is available for viewing and downloading from the ECF system and that Owen B. Carragher, ocarragher@lcattorneys.com, Peter J. Rossi, prossi@lcattorneys.com and J. Scott Kilpatrick, jskilpatrick@cck-law.com will receive notice through the ECF system.

/s/ C. Russell Bengtson